# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 45627

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

BYRON LEE SANCHEZ,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

Boise, April 2019 Term

Opinion Filed: June 13, 2019

Karel A. Lehrman, Clerk

_____

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Steven Hippler, District Judge.

District court judgment of conviction, affirmed.

Eric D. Frederickson, State Appellant Public Defender, Boise, for appellant. Jenevieve C. Swinford, Deputy State Appellate Public Defender argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Lori A. Fleming, Deputy Attorney General argued.

_____

BURDICK, Chief Justice.

Byron Lee Sanchez appeals the Ada County district court's judgment of conviction for one count of threats against a public servant. In September 2016, Sanchez was in prison for a felony injury to a child offense arising out of Gem County. While incarcerated, Sanchez sent a letter to the Gem County prosecutor that allegedly threatened harm to the prosecutor and his family. Sanchez's letter prompted the State to charge Sanchez with one count of threats against a public servant with an enhancement because Sanchez committed the offense on the grounds of a correctional facility. A jury convicted Sanchez and he was sentenced to consecutive five-year prison terms, with four years fixed. On appeal, Sanchez challenges the district court's denial of his pre-trial motion to dismiss as well as several evidentiary rulings by the district court. We affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Sanchez was charged and convicted of one count of threats against a public servant in violation of Idaho Code section 18-1353(1)(b) with an enhancement because the offense was committed on the grounds of a correctional facility in violation of Idaho Code section 19-2520F. The charge arose after Sanchez sent an allegedly threatening letter to a Gem County prosecutor who was involved in a separate criminal case against Sanchez. The prosecutor had previously prosecuted and obtained a conviction against Sanchez for felony injury to a child. Following Sanchez's injury to a child conviction, the prosecutor represented the State in a Child Protection Act case to determine placement of Sanchez's children. While Sanchez was incarcerated for the injury to a child charge and awaiting action on his petition for post-conviction relief, Sanchez mailed a letter to the prosecutor's office stating the following:

> I hope you and your's [sic] are doing well and congradulations [sic] on the new addition to your family.

> To business: A prosecutor has the responsibility of a minister of justice . . . This responsibility carries with it specific obligations to see that the defendant is accorded justice, that guilt is decided upon the basis for sufficient evidence and that precautions are taken to prevent and to rectify the conviction of innocent persons. I.C.R. 3.8(g); (H).

> I am about to put some things into motion that neither you or I can undo.

> I don't want to, but I absolutely will. I would like to think that we are reasonable. I consider myself a Christian. Retribution does not restore. Hurting others, (even when they deserve it) also injuries [sic] me. I seek mitigation. I am coming to you from a position of Legal strength asking you to consider coming to the prison and talking privately.

> I have operated transparently from the beginning. I am willing to make a one time offer which must be acted upon very soon; otherwise I will be forced to do this the hard-way. My chess pieces are ready to move, and moving. Parties have been contacted who await instructions.

> I seek an opportunity to show Idaho what mercy looks like.

> My God desires mercy over judgement, but make no mistake, when left no options, He will execute vengence [sic] and wrath. Mistakes have been made; let us mitigate them by having an honest private conversation and decide what action may be acceptable to all parties.

> Me, sitting in prison, with my children in harm's way, for a crime I didn't commit, past my fixed time, is unacceptable. I have four possible solutions to offer and all of them are more pleasant than what is about to happen. Refuse, and what happens next is your doing.

After the State charged Sanchez with one count of threats against a public servant after he sent the letter, Sanchez filed two motions to dismiss, first arguing section 18-1353(1)(b) was unconstitutionally overbroad and vague. In his second motion to dismiss, Sanchez argued the amended information was jurisdictionally deficient because it did not include the "material element of 'harm' in the offense charged." After a hearing on Sanchez's motions, the district court denied both of Sanchez's motions to dismiss. As to the first motion, the district court determined Sanchez failed to carry his burden of establishing section 18-1353(1)(b) was unconstitutionally overbroad or vague. As to Sanchez's second motion, the district court determined "harm" was implicated in the information, but the district court granted the State leave to amend the information to expressly include the element of harm.

Prior to trial, Sanchez moved to exclude two of the State's exhibits, one being the first page of Sanchez's conviction for injury to a child, and the second being the first page of Sanchez's petition for post-conviction relief. The district court denied both motions, determining both were relevant to Sanchez's motive and intent. During trial, the State elicited testimony from the prosecutor about his reaction to reading the letter. Sanchez objected and was overruled. A jury convicted Sanchez, and the district court sentenced him to five years, with four fixed, to run consecutively with his current term. Sanchez timely appeals the district court's judgment of conviction.

## II. ISSUES ON APPEAL

1. Whether the district court erred when it denied Sanchez's motion to dismiss.
2. Whether the district court abused its discretion when it admitted evidence of the prosecutor's reaction to Sanchez's letter.
3. Whether the district court abused its discretion in admitting evidence of Sanchez's prior conviction for injury to a child.
4. Whether the district court abused its discretion in admitting evidence of Sanchez's post-conviction proceeding.
5. Whether the errors alleged by Sanchez, in the aggregate, deprived him of a fair trial.

## III. STANDARD OF REVIEW

"[C]onstitutional questions and questions of statutory interpretation are questions of law, [therefore] this Court exercises free review over both." *Leavitt v. Craven*, 154 Idaho 661, 665, 302 P.3d 1, 5 (2012) (quoting *Stuart v. State*, 149 Idaho 35, 40, 232 P.3d 813, 818 (2010)). In cases challenging the constitutionality of a statute:

> There is a presumption in favor of the constitutionality of the challenged statute or regulation, and the burden of establishing that the statute or regulation is unconstitutional rests upon the challengers. An appellate court is obligated to seek an interpretation of a statute that upholds it [sic] constitutionality. The judicial power to declare legislative action unconstitutional should be exercised only in clear cases.

*Id.* (quoting *Stuart*, 149 Idaho at 40, 232 P.3d at 818).

> This Court reviews questions regarding the admissibility of evidence using a mixed standard of review. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). First, whether the evidence is relevant is a matter of law that is subject to free review. *State v. Field*, 144 Idaho 559, 569, 165 P.3d 273, 283 (2007). Second, we review the district court's determination of whether the probative value of the evidence outweighs its prejudicial effect for an abuse of discretion. *Stevens*, 146 Idaho at 143, 191 P.3d at 221.

*State v. Ehrlick*, 158 Idaho 900, 907, 354 P.3d 462, 469 (2015). When this Court reviews whether a trial court has abused its discretion, the four-part inquiry is "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 864, 421 P.3d 187, 194 (2018) (citation omitted).

## IV.  ANALYSIS

### A.  The district court did not err when it denied Sanchez's motion to dismiss.

Prior to trial, Sanchez filed a motion to dismiss arguing that Idaho Code section 18-1353(1)(b) was unconstitutionally overbroad and vague when considered with the definition of "harm" in Idaho Code section 18-1351(4). The district court denied Sanchez's motion to dismiss, determining Sanchez failed to carry his burden of establishing that section 18-1353(1)(b) was unconstitutionally overbroad or vague. On appeal, Sanchez contends the district court erred in denying his motion to dismiss because Idaho Code section 18-1353(1)(b) is facially overbroad. For the reasons discussed below, section 18-1353(1)(b) is not facially overbroad and the district court's denial of Sanchez's motion to dismiss is affirmed.

"The First Amendment to the Constitution of the United States protects both actual speech and symbolic or expressive conduct." *State v. Poe*, 139 Idaho 885, 893, 88 P.3d 704, 712 (2004) (citing *Virginia v. Black*, 538 U.S. 343 (2003)). "The First Amendment of the United States . . . applies to the states through the Fourteenth Amendment." *State v. Manzanares*, 152 Idaho 410, 424, 272 P.3d 382, 396 (2012) (citing *Elfbrandt v. Russell*, 384 U.S. 11, 18 (1966)).

4

The Idaho Constitution similarly guarantees freedom of speech. *See* Idaho Const. art. I, § 9. The United States Supreme Court has made it clear that when a litigant alleges a statute is facially overbroad, like Sanchez has done here, there is no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (citation omitted). In other words, "[l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.*

There are two separate standards for determining the facial constitutionality of a statute under the First Amendment, depending upon if the statute only proscribes speech, or if it proscribes conduct as well. *Poe*, 139 Idaho at 892, 88 P.3d at 711. "A statute that punishes only spoken words is facially overbroad if it is susceptible of application to speech that is protected by the First Amendment." *Id.* at 893, 88 P.3d at 712 (citing *Gooding v. Wilson*, 405 U.S. 518 (1972)). "The overbreadth doctrine has less application, however, to conduct." *Id.* (citing *Virginia v. Hicks*, 539 U.S. 113 (2003)). "[W]here conduct and not merely speech is involved . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 892, 88 P.3d at 711 (citation omitted). Put another way, "the statute will not be held overly broad unless its application to protected speech is substantial, not only in an absolute sense but also relative to the scope of the law's plainly legitimate applications." *Id.* at 893, 88 P.3d at 712.

Accordingly, "[t]he two-part test for unconstitutional overbreadth asks (1) whether the statute regulates constitutionally protected conduct, and (2) whether the statute precludes a significant amount of that constitutionally protected conduct." *Manzanares*, 152 Idaho at 423, 272 P.3d at 395 (citation omitted). "If the answer to both steps is in the affirmative, then the statute is overbroad." *Id.*

Thus, the initial inquiry is whether section 18-1353(1)(b) proscribes conduct as well as speech. *See id.* The statute states:

> (1) Offenses defined. A person commits an offense if he: . . .
>
> (b) threatens harm to any public servant with purpose to influence his decision, opinion, recommendation, vote or other exercise of discretion in a judicial or administrative proceeding . . . .

5

I.C. § 18-1353(1)(b). "Harm" as used in the statute "means loss, disadvantage or injury, including loss, disadvantage or injury to any other person or entity in whose welfare he is interested." I.C. § 18-1351(4). The district court found the statute to proscribe both speech and conduct. On appeal, the parties agree that the statute proscribes both speech and conduct. We agree that the statute does proscribe speech as well as conduct. As the district court correctly noted, threats may often be verbal statements, but can also take the form of conduct, for example through threatening gestures.

Because section 18-1353(1)(b) proscribes speech as well as conduct, the second inquiry is "whether the statute precludes a significant amount of that constitutionally protected conduct." *Manzanares*, 152 Idaho at 423, 272 P.3d at 395. "The overbreadth doctrine is aimed at statutes which, though designed to prohibit legitimately regulated conduct, include within their prohibitions constitutionally protected freedoms." *Id.* (citing *State v. Korsen*, 138 Idaho 706, 713, 69 P.3d 126, 133 (2003), *abrogated on other grounds by Evans v. Michigan*, 568 U.S. 313 (2013)). "A statute that is found to be overbroad may not be enforced at all, even against speech or conduct that could constitutionally be prohibited by a more narrowly drawn statute." *Id.* (quoting *Korsen*, 138 Idaho at 714, 69 P.3d at 134).

However, only when a "statute intrudes upon a *substantial amount* of constitutionally protected conduct may it be struck down for overbreadth." *Id.* at 424, 272 P.3d at 396 (emphasis in original) (quoting *Korsen*, 138 Idaho at 714, 69 P.3d at 134). "A statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications. Rather, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* (citation omitted). The United States Supreme Court has cautioned that "[a]pplication of the overbreadth doctrine" is "strong medicine." *Broadrick*, 413 U.S. at 613. "It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Id.*

In this case, Sanchez argues that section 18-1353(1)(b) prohibits a substantial amount of protected speech because the statute only prohibits "harm", not "unlawful harm," and therefore criminalizes lawful threats that go beyond unprotected true threats and fighting words. *See Poe*, 139 Idaho at 894, 88 P.3d at 713. Sanchez contends that because "harm" is defined as "loss, disadvantage, or injury" the statute is almost limitless in the speech or conduct it criminalizes.

6

The district court recognized that while the hypotheticals raised by Sanchez may conceivably be prohibited by the statute, they do not constitute a substantial amount of protected speech and the statute does not have a chilling effect on protected speech. For reasons to be discussed, the district court did not err.

As noted, only when a "statute intrudes upon a *substantial amount* of constitutionally protected conduct may it be struck down for overbreadth." *Manzanares*, 152 Idaho at 424, 272 P.3d at 396 (emphasis in original) (quoting *Korsen*, 138 Idaho at 714, 69 P.3d at 134). "Overbreadth is not substantial if, despite the fact that some constitutionally protected conduct is proscribed, the statute covers a wide range of conduct that is easily identifiable and within the [state's] power to prohibit." *State v. Doe*, 148 Idaho 919, 925, 231 P.3d 1016, 1022 (2010).

Here, section 18-1353(1)(b) is not unconstitutionally overbroad. Section 18-1353(1)(b) covers a "wide range of conduct" that is within the state's "power to prohibit." *See Doe*, 148 Idaho at 925, 231 P.3d at 1022. As the State notes, threats of violence, property damage, extortion, and blackmail are examples of harm that fall within the statute's legitimate sweep. Sanchez devotes much of his briefing to hypothetical situations where lawful threats could fall within the ambit of section 18-1353(1)(b). However, to the extent those situations were to arise, they could be effectively dealt with on a case-by-case basis. *Broadrick*, 413 U.S. 601, 615–16. And, as previously noted, "[a] statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications." *Manzanares*, 152 Idaho at 424, 272 P.3d at 396 (citation omitted). "Rather, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* Accordingly, here, the hypothetical situations raised by Sanchez are not persuasive for finding the statute overbroad.

Decisions from other state courts further support that section 13-1853(1)(b) is not overbroad. First, in *State v. Stephenson*, a defendant alleged a statute was unconstitutionally overbroad because it criminalized a substantial amount of constitutionally protected speech or conduct. *State v. Stephenson*, 950 P.2d 38, 40 (Wash. Ct. App. 1998). The statute at issue stated: "A person is guilty of intimidating a public servant if, by use of a threat, he attempts to influence a public servant's vote, opinion, decision, or other official action as a public servant." *Id.* (citing RCW (9A.76.180). "Threat" was defined, in part, as "to do any other act which is intended to harm substantially the person threatened or another with respect to his health, safety, business,

7

financial condition, or personal relationships." *Id.* at 43 (citing RCW 9A.04.110(25)(j)). The defendant argued the statute swept "too broadly and could encompass even a threat to file and run against a public official to coerce a decision to the threatener's likening." *Id.* at 804. The Washington Court of Appeals disagreed and stated:

> Although it is possible to conceive of circumstances in which application of the statute would be unreasonable, that alone will not render it unconstitutional. Unless there is a realistic danger that the statute will significantly compromise recognized First Amendment protections of parties not before the court, we will not declare it facially invalid on overbreadth grounds. We do not see that danger here.

*Id.* (citations omitted). Thus, the *Stephenson* court held that "[c]onsidering the State's compelling interest in maintaining the integrity of government action and the narrow tailoring of the statute, we conclude that the challenged statute is reasonable in light of its purposes and is not unconstitutionally overbroad." *Id.* at 44.

Similarly, in *People v. Janousek*, the Colorado Supreme Court determined a statute that criminalized "attempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision . . ." was not unconstitutionally overbroad. 871 P.2d 1189, 1196 (Colo. 1994) (analyzing Colo. Rev. Stat. § 18-8-306). The *Janousek* court determined the burden on a person's speech was minimal and insufficient to provoke the overbreadth doctrine. *Id.* Lastly, in *State v. Spottedbear*, the Montana Supreme Court held that defendant's counsel was not ineffective for failing to challenge the overbreadth of a statute that criminalized "threaten[ing] harm to any person . . . with the purpose to influence the person's decision . . . as a public servant . . . ." 380 P.3d 810, 814 (Mont. 2016) (analyzing MCA § 45-7-102(1)(a)(i)). There, the defendant argued the definition of "harm" was expansive and not limited to "unlawful harm." *Id.* The *Spottedbear* court stated, "when compared to the statute's plainly legitimate sweep, [defendant] would have a high hurdle to clear in showing how the statute adversely affects the rights of others in a real and substantial way." *Id.* at 816 (citation and quotation marks omitted).

Sanchez attempts to distinguish *Stephenson*, *Janousek*, and *Spottedbear*. Sanchez contends that in *Stephenson*, "threat" contained within its definition the words "harm substantially" rather than just "harm" as in Idaho's statute and therefore was narrower than Idaho's statute. While it is true that the statute in *Stephenson* contained "substantially" in

8

addition to "harm," the *Stephenson* court distinguished the two only to the extent that the *Stephenson* court said that threats must be "substantial, not threats that merely embarrass or inconvenience their target." *Stephenson*, 950 P.2d at 44. Here, as has been discussed, under the Idaho statute, a threat that falls within constitutionally protected speech or conduct, such as one that "merely embarrasses or inconveniences" a public servant would be outside the ambit of section 18-1353(1)(b) and dealt with on a case-by-case basis. *See Broadrick*, 413 U.S. at 615–16. Importantly, the *Stephenson* court noted that the critical inquiry is whether a threat "attempt[s] to influence the targeted public servant's behavior." *Id.* This is the same as the statute at issue here; that is, the harm threatened only becomes criminal under section 18-1353(1)(b) if the harm has the "purpose to influence" the public servant's behavior. I.C. § 18-1353(1)(b). Sanchez's attempt to distinguish *Stephenson* is unavailing.

Sanchez next argues that *Janousek* is not persuasive because the Colorado Supreme Court's discussion of the statute made it clear that only unlawful conduct was prohibited. While it is true the statute at issue in *Janousek* was narrower than section 18-1353(1)(b), the court there nonetheless reiterated that in order to invalidate a statute, the overbreadth must be real and substantial. *Janousek*, 871 P.2d at 1194. And here again, in determining there was no unconstitutional overbreadth, the court noted the prohibition was "confined to attempts to influence public servants . . . ." *Id.* at 1193, n. 10. While Sanchez raises many hypotheticals where a defendant could threaten "harm" within the meaning of section 18-1351(4), those acts are only actionable under section 18-1353(1)(b) if intended to influence a public servant's decision, opinion, recommendation, vote or exercise of direction in a judicial or administrative proceeding. I.C. § 18-1353(1)(b). Thus, *Janousek* does not alter the analysis.

Lastly, Sanchez argues *Spottedbear* should not be persuasive to this Court because there, the statute at issue was considered in a post-conviction appeal, and the court's decision was limited to whether counsel's actions were reasonable. However, Sanchez concedes that the statute and arguments made in *Spottedbear* are nearly identical to those at issue here. While the *Spottedbear* court did not rule on the constitutionality of the statute because the defendant's conduct was within the statute's legitimate sweep, it noted the defendant "would have a high hurdle to clear in showing how the statute adversely affects the rights of others in a real and substantial way." *Spottedbear*, 380 P.3d at 814.

In sum, section 18-1353(1)(b) is not unconstitutionally overbroad. As discussed above, the statute does not prohibit a substantial amount of protected speech or conduct, as is required for the statute to be struck down for overbreadth. *Manzanares*, 152 Idaho at 424, 272 P.3d at 396. Rather, as noted, the statute "covers a wide range of conduct that is easily identifiable and within the [state's] power to prohibit." *Doe*, 148 Idaho at 925, 231 P.3d at 1022. While there may be hypothetical situations where lawful threats could fall within the purview of the statute, those situations should be dealt with on a case-by-case basis. *See Broadrick*, 413 U.S. at 615–16; *see also Manzanares*, 152 Idaho at 424, 272 P.3d at 396 ("A statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications. Rather, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.") (citation omitted). Lastly, the out-of-state cases discussed above do not alter our analysis. Though Sanchez seeks to distinguish those cases from the Idaho statute, his attempts to do so are unpersuasive. Accordingly, the district court properly denied Sanchez's motion to dismiss.

**B.     The district court did not abuse its discretion when it admitted evidence of the prosecutor's reaction to Sanchez's letter.**

Sanchez next challenges the district court's admission of the prosecutor's testimony about his reaction to reading Sanchez's letter and contends such evidence was not relevant to prove any material fact. The State contends that while the prosecutor's reaction to the letter was not itself an element of the charged crime, it was relevant to the jury's determination of whether the statements in the letter were in fact threats. For the reasons discussed below, the district court did not abuse its discretion in admitting evidence of the prosecutor's reaction to the letter.

The challenged testimony elicited from the prosecutor is as follows:

> Q [State]: Did you read the letter when it came to you?
>
> A [Prosecutor]: I did.
>
> Q [State]: What was your initial reaction to it?
>
> A [Prosecutor]: I was shocked, I was scared.
>
> [Sanchez's attorney]: Objection, relevancy.
>
> The Court: Overruled.
>
> Q [State]: Let's talk about being shocked and scared. Did you, during your course of your prosecution of Mr. Sanchez, learn anything about his demeanor or his interpersonal relationships what in conjunction with what he wrote in that letter gave you concern or pause?

10

[Sanchez's attorney]: Objection, leading.

[State]: It's a "yes" or "no," your Honor.

The Court: He can answer—the question is proper for purposes of laying a foundation and you can proceed in a non-leading fashion.

[State]: Thank you.

[Prosecutor]: Yes.

Q [State]: Why?

A [Prosecutor]: Based on my prosecution of Mr. Sanchez, he had shown several different instances of being very aggressive or violent.

Q [State]: And why did that cause you harm based on the letter itself?

[Sanchez's attorney]: Objection.

Q: [State]: Not cause you harm, why did it give you alarm based on the letter itself?

A: [Prosecutor]: Well, with my knowledge of Mr. Sanchez's history and the threats contained in the letter, I was worried perhaps me or my family was in danger.

The parties disagree about whether the evidence of the prosecutor's reaction to reading the letter was relevant. Sanchez contends that the reaction of the public servant is immaterial to prove the elements of the crime charged pursuant to section 18-1353(1)(b). The State contends that it was required to prove Sanchez "threatened harm" to the prosecutor and that whether the letter constituted a threat was disputed, as Sanchez's theory at trial was that the letter was an attempt to negotiate a resolution of his post-conviction case. Thus, the State contends, whether the statements in the letter were threats of harm was an issue before the jury and evidence of the prosecutor's reaction to the letter was relevant to that dispute. As discussed below, the evidence was relevant and admissible, and the district court did not abuse its discretion in overruling Sanchez's relevancy objection.

The Idaho Rules of Evidence applicable at the time of Sanchez's trial[1] provided that "[a]ll relevant evidence is admissible except as otherwise provided by these rules or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible." I.R.E. 402 (1985); *see also State v. Alwin*, 164 Idaho 160, 166, 426 P.3d 1260, 1266 (2018). This Court has said, "[e]vidence is relevant if the evidence has 'any tendency to make the existence of

---

[1] The Idaho Rules of Evidence were amended in March 2018 and the amendments became effective July 1, 2018. Though the language differs slightly from the Rules in place at the time of Sanchez's trial, the content is substantially the same.

any fact that is of consequence to the determination of the action more probable or less probable than [the fact] would be without the evidence.'" I.R.E. 401 (1985). "The question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *State v. Hall*, 163 Idaho 744, 781, 419 P.3d 1042, 1079 (2018) (quoting *State v. Shutz*, 143 Idaho 200, 202, 141 P.3d 1069, 1071 (2006)).

This Court has said that for evidence "[t]o be admissible, the evidence must be relevant to a material and disputed issue concerning the crime charged." *State v. Yakovac*, 145 Idaho 437, 445, 180 P.3d 476, 484 (2008). "Whether a fact is material is determined by its relationship to the legal theories presented by the parties." *State v. Koch*, 157 Idaho 89, 100–01, 334 P.3d 280, 291–92 (2014) (citing *Yakovac*, 145 Idaho at 443, 180 P.3d at 482.

While Idaho has not yet addressed the context in which threats should be considered, other federal and state courts provide that "[a]lleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1075 (9th Cir. 2002) (citation omitted); *see also State v. Krijger*, 97 A.3d 946, 957 (Conn. 2014) (same); *People v. Falck*, 52 Cal. App. 4th 287, 297 (Cal. Ct. App. 1997) ("[I]n determining whether a threat occurred, the entire factual context, including the surrounding events and the reaction of the listeners, must be considered."). And, "[w]hether a given writing constitutes a threat is an issue of fact for the trial jury." *United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994) (citing *United States v. Lincoln*, 589 F.2d 379, 381–82 (8th Cir.1979)). The concept that the reaction of the listener is relevant to determining whether a statement is a threat is similar to Idaho's statute on assault which provides in part that an assault must "create[] a well-founded fear in such other person that such violence is imminent." I.C. § 18-901. Thus, while Idaho has not yet addressed the context in which threats against public servants should be considered, it has embraced the concept that the perception of the receiver is relevant to such an inquiry. *See id.*

In this case, the State's legal theory was that Sanchez "threatened harm" to the prosecutor "by sending a letter to [the prosecutor] that threatened harm to [him] and/or his family," "with the purpose to influence [the prosecutor]'s decisions, opinion, recommendation . . . or other exercise of discretion in a judicial or administrative proceeding." I.C. § 18-1353(1)(b). Specifically, the State was required to prove the purpose of Sanchez's threat was to influence the prosecutor's decisions in Sanchez's "pending child protection proceeding and/or future parole

12

proceedings." Sanchez, on the other hand, argued at trial that the letter was not a threat, but rather an attempt to "negotiate" with the prosecutor. Thus, it was a "material and disputed issue" at trial whether the letter contained threats to harm the prosecutor or mere attempts at negotiation. *Yakovac*, 145 Idaho at 445, 180 P.3d at 484. The prosecutor's reaction to receiving Sanchez's letter was relevant to that dispute because it showed the interaction between Sanchez and the prosecutor was not one of negotiation. Though Sanchez argues that the prosecutor's reaction was not relevant in any way because it was not an element of the crime charged, whether Sanchez threatened harm *was* an element of the crime charged, and the prosecutor's reaction was relevant to that dispute based on "its relationship to the legal theories presented by the parties." *Koch*, 157 Idaho at 100-01, 334 P.3d at 291-92 (citing *Yakovac*, 145 Idaho at 443, 180 P.3d at 482). Moreover, as noted, other courts have held the reaction of the listener, or in this case receiver of the threat, to be relevant when determining the context of a threat. *See Planned Parenthood of Columbia/Willamette, Inc.*, 290 F.3d at 1075; *Falck*, 52 Cal. App. 4th at 297. Accordingly, the district court did not abuse its discretion in admitting the prosecutor's testimony about his reaction to receiving the letter.

**C.      The district court did not abuse its discretion in admitting evidence of Sanchez's prior conviction for injury to a child.**

Sanchez next argues the district court abused its discretion when it admitted evidence of Sanchez's prior conviction for injury to a child. During a pretrial conference, the district court ruled that the face-sheet showing Sanchez's conviction for felony injury to a child would be admissible at trial, with a limiting instruction, because it was relevant to show Sanchez's motive and intent in writing the letter to the prosecutor. When Sanchez's counsel argued the face-sheet was 404(b) evidence, the court stated, "I'm not sure this is true 404(b) evidence, it's really the underlying facts of the case itself and those are related to a prior bad act." The court stated that with proper instructions the prejudice did not substantially outweigh the probative value of "this essential evidence of the backdrop of this case."

During trial, Sanchez renewed his objections to the face-sheet showing the felony injury to a child conviction. The court again ruled the face-sheet was admissible, reiterating that the face-sheet was not "true 404(b) in the sense it's some other bad act that's extraneous, it's intrinsic to the facts of the case, it's part of the facts of the case." The court went on to say that even if it was 404(b) evidence, Sanchez had notice of what the State intended to prove. The jury was given instructions that the evidence could only be considered "for the limited purpose of

13

proving the defendant's motive and/or to demonstrate the underlying facts and circumstances giving rise to the charge and/or to prove the existence and nature of the proceedings from which the state claims the defendant was seeking relief." For the reasons discussed below, the district court did not abuse its discretion in admitting evidence of Sanchez's injury to a child conviction.

As noted, "[a]ll relevant evidence is admissible except as otherwise provided by these rules or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible." I.R.E. 402 (1985); *see also Alwin*, 164 Idaho at 166, 426 P.3d at 1266. This Court has said, "[e]vidence is relevant if the evidence has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than [the fact] would be without the evidence.'" *Alwin*, 164 Idaho at 166, 426 P.3d at 1266 (quoting I.R.E. 401 (1985)).

Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." *Id.* (quoting I.R.E. 404(b)). However, "such evidence may be admissible for other permitted purposes such as proving "*motive*, opportunity, *intent*, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* (quoting I.R.E. 404(b)) (emphases added). If the State intends to offer 404(b) evidence for a permitted purpose they "shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." *Id.* (quoting I.R.E. 404(b)).

> The admissibility of evidence offered pursuant to Rule 404(b) requires a two-step analysis. First, the evidence must be sufficiently established as fact and relevant as a matter of law to a material and disputed issue other than the character or criminal propensity of the defendant. Second, the court must determine pursuant to Rule 403 that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*State v. Capone*, 164 Idaho 118, 125, 426 P.3d 469, 476 (2018) (citations and quotation marks omitted).

In this case, Sanchez first argues the face-sheet showing the felony injury to a child conviction was 404(b) evidence and the district court improperly admitted it using the *res gestae* exception to the Rules of Evidence. To be sure, Sanchez has not challenged the admission of the face-sheet showing he was convicted of a felony on which the prosecutor he threatened was the prosecutor; rather, he only challenges the injury to a child designation. The State contends the

14

district court did not state it was admitting the face sheet pursuant to the *res gestae* exception. Moreover, the State contends, even if Sanchez's prior conviction was 404(b) evidence, the court properly determined it was relevant and admissible to show Sanchez's motive and intent. While the face-sheet showing Sanchez's conviction for injury to a child is 404(b) evidence, it was properly admitted pursuant to Rule 404(b) to show motive and intent, and Sanchez had notice of the admission and intended use.

"*Res gestae* evidence is other acts that occur during the commission of or in close temporal proximity to the charged offense which must be described to complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings." *State v. Kralovec*, 161 Idaho 569, 573, 388 P.3d 583, 587 (2017) (citation and quotation marks omitted). In *Kralovec*, this Court held that "evidence previously considered admissible as *res gestae* is only admissible if it meets the criteria established by the Idaho Rules of Evidence." *Id.* at 574, 388 P.3d at 588. Prior to our holding in *Kralovec*, evidence could be admitted as *res gestae*, without complying with the Rules of Evidence, if the evidence helped to "complete the story" of the crime or was "so inseparably connected" to the alleged crime that the "jury c[ould] not be given a complete presentation of the alleged crime without reference to the uncharged misconduct." *Id.* at 573, 388 P.3d at 587 (quoting *State v. Blackstead*, 126 Idaho 14, 19, 878 P.2d 188, 193 (Ct. App. 1994)). However, it is abundantly clear after *Kralovec* that evidence must comply with the Idaho Rules of Evidence in order to be admissible and *res gestae* and its iterations are not independently admissible. *Id.*

Despite the district court's citation to *res gestae* evidence in *Kralovec*, this Court nonetheless affirmed the district court's admission of evidence because the "court provided an alternative basis" for admitting the evidence holding "it was admissible under [I.R.E] 404(b) as evidence of [defendant's] intent." 161 Idaho at 574, 388 P.3d at 588.

In this case, the face-sheet showing Sanchez's felony conviction for injury to a child was 404(b) evidence because it was "[e]vidence of other crimes[.]" *Alwin*, 164 Idaho at 166, 426 P.3d at 1266 (quoting I.R.E. 401 (1985)). Therefore, the district court's conclusion that it was not "true" 404(b) evidence was erroneous. While the district court did not say it was admitting the evidence pursuant to the *res gestae* exception it did say the evidence was "really the underlying facts of the case itself and those are related to a prior bad act." It also stated the evidence was "interrelated" and "intrinsic" to the "facts of the case." However, the district court also stated

15

that "even if it was 404(b) evidence" Sanchez had notice of it, and went on to say it was admissible to show motive and intent. This is similar to *Kralovec*, where this Court affirmed the admittance of evidence that cited the *res gestae* exception because the court also provided an alternative basis for admitting the evidence. 161 Idaho at 574, 388 P.3d at 588.

Sanchez argues the face-sheet showing Sanchez's injury to a child conviction was not relevant to proving motive. Sanchez does not, however, address whether the face-sheet was relevant to showing Sanchez's intent, which is another exception to I.R.E. 404(b), and also another reason the district court cited for admitting the face-sheet. As discussed below, the face-sheet was relevant to showing Sanchez's motive and intent, and therefore was properly admitted pursuant to I.R.E. 404(b).

"Motive is generally defined as that which leads or tempts the mind to indulge in a particular act." *State v. Pepcorn*, 152 Idaho 678, 689, 273 P.3d 1271, 1282 (2012) (quoting *State v. Stevens*, 93 Idaho 48, 53, 454 P.2d 945, 950 (1969)). Motive "is distinguishable from intent, which is the purpose to use a particular means to effect a certain result." *Stevens*, 93 Idaho at 53, 454 P.2d at 950.

Here, Sanchez's conviction for injury to a child was relevant to show Sanchez's motive and intent in writing the letter to the prosecutor, as the State's theory was that Sanchez was motivated to write the letter due to the prosecution of Sanchez's injury to a child charge. The State also argued Sanchez's intent in writing the letter was to influence the prosecutor's handling of the ongoing child protection proceeding. Indeed, the letter references both the prosecutor's children as well as Sanchez's own children. Sanchez wrote: "I hope you and your's [sic] are doing well and congradulations [sic] on the new addition to your family. . . . Me, sitting in prison, with my children in harm's way, for a crime I didn't commit, past my fixed time, is unacceptable." The nature of Sanchez's prior conviction gave important information about his intent regarding otherwise vague statements in his letter. His letter contained statements like: "I am about to put things into motion that neither you or I can undo," "[h]urting others (even when they deserve it) also injures me," and "I am willing to make a one time offer which must be acted upon very soon; otherwise I will be forced to do this the hard way." These statements, together with the references to the prosecutor's children and his own children, and the evidence of the nature of his underlying conviction more clearly convey his purpose for sending the letter and the meaning of his statements therein. Because they were relevant to Sanchez's motive and

16

intent, the court did not abuse its discretion in allowing admission of this Rule 404(b) evidence. The injury to a child charge was relevant to show what motivated Sanchez to write the letter and what his intent was in writing the letter.

The State had to prove not only that Sanchez threatened harm, but also that he had the intent to "influence [the prosecutor's] decision, opinion, recommendation, vote or other exercise of discretion in a judicial or administrative proceeding . . . ." *See* I.C. § 18-1353(1)(b). The face-sheet showing Sanchez's injury to a child conviction was relevant and admissible under Rule 404(b) to show Sanchez's motive and intent. Therefore, because the district court indicated the evidence would be admissible even if it were Rule 404(b) evidence and that the probative value was not substantially outweighed by the danger of unfair prejudice, the district court did not abuse its discretion in admitting evidence of Sanchez's conviction for injury to a child.

**D.      The district court did not abuse its discretion in admitting evidence of Sanchez's petition for post-conviction relief.**

Sanchez next challenges the district court's admission of the face-sheet of Sanchez's post-conviction petition over Sanchez's relevancy objection. Sanchez contends the post-conviction proceeding was not relevant to prove any material fact. The State contends the face-sheet of the post-conviction petition was relevant to show the context in which Sanchez wrote the letter and to show Sanchez's motive and intent to threaten the prosecutor. The State also contends the post-conviction sheet was relevant to Sanchez's own theory of the case; that is, Sanchez argued he wrote the letter in an attempt to negotiate the post-conviction case. The district court admitted the post-conviction face sheet over Sanchez's relevancy objection after the State argued the face-sheet was relevant to the State's theory of what Sanchez was trying to influence the prosecutor to do when Sanchez wrote the letter. As discussed below, the district court did not abuse its discretion.

As noted, "[a]ll relevant evidence is admissible except as otherwise provided by these rules or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible." I.R.E. 402 (1985); *see also Alwin*, 164 Idaho at 166, 426 P.3d at 1266. This Court has said, "[e]vidence is relevant if the evidence has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than [the fact] would be without the evidence.'" *Alwin*, 164 Idaho at 166, 426 P.3d at 1266 (quoting I.R.E. 401 (1985)). "Whether a fact is material is determined by its relationship to the legal

17

theories presented by the parties." *Koch*, 157 Idaho at 100–01, 334 P.3d at 291–92 (citing *Yakovac*, 145 Idaho at 443, 180 P.3d at 482.

Here, the face-sheet of Sanchez's post-conviction petition was relevant to the legal theories presented by the parties. *See id.* Sanchez's defense was that the letter was not a threat to the prosecutor, but rather an attempt to negotiate the post-conviction proceeding. At trial, Sanchez's attorney stated: "[Sanchez] wrote the letter to negotiate a case that would appear to be a post-conviction proceeding." Similarly, the post-conviction face-sheet was relevant to prove the State's theory that the prosecutor or his office handled Sanchez's felony injury to a child case, the child protection case, and the post-conviction case, and that Sanchez's motive and intent in writing the letter was to influence the prosecutor as to those proceedings. The State argued in closing: "[Sanchez] had the motivation to do this . . . He had children that were no longer in his care and custody, he was incarcerated, and *he was trying to get out of prison*. . . . What was the intent? To influence [the prosecutor] to act on Mr. Sanchez's behalf." Thus, the fact that Sanchez had filed for post-conviction relief was relevant to the "legal theories presented" by both Sanchez and the State. *See Koch*, 157 Idaho at 100-01, 334 P.3d at 291-92. Accordingly, the district court did not abuse its discretion in admitting evidence of Sanchez's post-conviction petition.

**E.    The cumulative error doctrine does not apply.**

"Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. However, a necessary predicate to the application of the doctrine is a finding of more than one error." *State v. Parker*, 157 Idaho 132, 149, 334 P.3d 806, 823 (2014) (quoting *State v. Perry*, 150 Idaho 209, 230, 245 P.3d 961, 982 (2010)). "The presence of errors, however, does not by itself require the reversal of a conviction, since under due process a defendant is entitled to a fair trial, not an error-free trial." *State v. Johnson*, 163 Idaho 412, 428, 414 P.3d 234, 250 (2018) (quoting *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998)). In this case, as discussed above, the district court did not commit any error in its admission of evidence at Sanchez's trial. Accordingly, the cumulative error doctrine is inapplicable to this case.

## V.    CONCLUSION

We hold that: 1) the district court did not err in denying Sanchez's motion to dismiss; 2) the district court did not abuse its discretion in admitting the prosecutor's testimony about his

18

reaction to Sanchez's letter; 3) the district court did not abuse its discretion in admitting the judgment of conviction showing Sanchez's conviction for injury to a child; 4) the district court did not abuse its discretion in admitting evidence of Sanchez's post-conviction petition; 5) the cumulative error doctrine is inapplicable in this case. Accordingly, the district court's judgment of conviction is affirmed.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR**.