IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 51084

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | Filed: March 21, 2025 |
| Plaintiff-Respondent, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | |
| SUSAN KAYE LANG, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, Senior District Judge. Hon. Abraham Wingrove, Magistrate.

Order of the district court on intermediate appeal from the magistrate court, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Susan Kaye Lang appeals from her judgment of conviction under Idaho Code § 18-6409(1) for disturbing the peace. Specifically, Lang asserts I.C. § 18-6409(1) is overbroad as applied to the facts of this case and the district court erred in affirming the magistrate court's denial of her renewed motion to dismiss. We affirm.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

Lang was charged with disturbing the peace pursuant to I.C. § 18-6409(1) after protesting in front of Ada County Commissioner Diana Lachiondo's home. Lachiondo was attending a Central District Health (CDH) meeting virtually from the county courthouse to discuss various public protocols concerning COVID. Around 5:00 p.m., Lang and two other protesters went to Lachiondo's home, expecting Lachiondo to be attending the virtual CDH meeting from her home,

1

and began protesting as the meeting started at 5:15 p.m. Lang recorded a video of the protest which showed all three protesters on the sidewalk making noise by banging on buckets, sounding air horns and a megaphone siren, playing clips of loud noise and a recording from the movie "Scarface" through a speaker, and shouting: "Down with Lachiondo," and "Why don't you come out?" On the sidewalk in front of the home, the words "no lockdown" were written in chalk. None of the protesters trespassed onto Lachiondo's property. At the time, Lachiondo's two children, ages ten and eight, were in the home while Lachiondo's mother was away from the house on a walk. The children heard the noise, and the oldest child testified he felt scared, took his younger brother into another room, called his parents, and waited for their grandmother to return. The older child stated he believed the noise lasted about twenty minutes.

A neighbor also testified he had heard the noise and that it lasted between fifteen and twenty minutes. When Lachiondo's mother returned from her walk, she observed a woman banging on a bucket, two men with a megaphone and a speaker playing a recording, and various yelling from all three individuals. Later, law enforcement responded to a call regarding the noise but the protesters had left by the time an officer arrived at the scene. Lachiondo testified that she had received a call from her son during the CDH meeting and left the meeting immediately to go home. No protesters were at the home when she arrived.

The State charged Lang with maliciously and willfully disturbing the peace by loud or unusual noise and/or tumultuous conduct, pursuant to I.C. § 18-6409. Before trial, Lang filed a motion to dismiss, arguing the use of car horns and air horns is protected speech and that the disturbing the peace statute was overbroad as applied to Lang's conduct. The magistrate court denied the motion. At trial, Lang renewed her motion to dismiss, which was also denied. The jury found Lang guilty as charged. Lang appealed to the district court, arguing that the magistrate court erred in denying her renewed motion to dismiss. The district court affirmed the denial, finding there were insufficient communicative elements to Lang's conduct to invoke First Amendment protections and that the statute was a content-neutral restriction which was not overbroad as applied to Lang's conduct. Lang appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent

evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefore, and either affirm or reverse the district court.

Constitutional questions are questions of law, over which an appellate court exercises free review. *State v. Sanchez*, 165 Idaho 563, 567, 448 P.3d 991, 995 (2019). In cases challenging the constitutionality of a statute, there is a presumption in favor of the constitutionality of the challenged statute or regulation, and the burden of establishing that the statute or regulation is unconstitutional rests upon the challengers. *Id.* An appellate court is obligated to seek an interpretation of a statute that upholds its constitutionality, and the judicial power to declare legislative action unconstitutional should be exercised only in clear cases. *Id.* When reviewing a claim of overbroad application, we freely review the application of constitutional principles to the facts found. *State v. Pentico*, 151 Idaho 906, 912, 265 P.3d 519, 525 (Ct. App. 2011).

**III.**

**ANALYSIS**

Lang argues that I.C. § 18-6409 is overbroad as applied to her conduct and that the statute regulates and precludes Lang's constitutionally protected conduct. The State argues that Lang's loud noises were not constitutionally protected conduct and that, even considering such conduct as protected, the statute was properly applied to Lang's conduct because the statute: (1) is content-neutral; (2) narrowly tailored to serve a significant government interest; and (3) leaves open ample alternative channels for communication.

The First Amendment to the Constitution of the United States provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. The First Amendment applies to the States through the Fourteenth Amendment and protects both speech and expressive conduct. *State v. Cartwright*, 168 Idaho 802, 808, 487 P.3d 737, 743 (2021). The Supreme Court of the United States has long interpreted the First Amendment to provide protections for more than just the spoken word. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). The

3

First Amendment to the Constitution of the United States protects both actual speech and symbolic or expressive conduct. *State v. Poe*, 139 Idaho 885, 893, 88 P.3d 704, 712 (2004).

When a statute is challenged as overbroad, the courts employ a two-part test to ask whether: (1) the statute regulates constitutionally protected conduct; and (2) the statute precludes a significant amount of constitutionally protected conduct. *Sanchez*, 165 Idaho at 568, 448 P.3d at 996. The overbreadth doctrine has less application, however, to conduct. *Id*. *See also Broadrick v. Oklahoma*, 413 U.S. 601, 614 (1973) (noting that overbreadth scrutiny is "less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner"). Where conduct and not merely speech is involved, the overbreadth of a statute must not only be real, but substantial and judged in relation to the statute's plainly legitimate sweep. *Poe*, 139 Idaho at 892, 88 P.3d at 711. A statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications. *State v. Manzanares*, 152 Idaho 410, 424, 272 P.3d 382, 396 (2012); *see also Members of City Council v. Taxpayers of Vincent*, 466 U.S. 789, 800 (1984) ("[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.").

Idaho Code § 18-6409(1) states:

> Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood, family or person, by loud or unusual noise, or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting, or fires any gun or pistol, or uses any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner, is guilty of a misdemeanor.

Lang argues that the statute regulates constitutionally protected conduct because her conduct was expressive. The United States Supreme Court has rejected the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends to express an idea. *Johnson*, 491 U.S. at 404. To determine whether conduct is sufficiently imbued with elements of communication to be constitutionally protected expressive conduct, a two-part test is applied. *Id*. The two-part test looks at whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it. *Id*.

The district court held that regardless of whether Lang intended to convey a particular message, the loud noises did not have sufficient communicative elements such that the First

Amendment protections could be invoked. We agree. Lang's conduct for which she was convicted of violating I.C. § 18-6409 is not expressive conduct protected by the First Amendment. Whatever Lang's intent, her conduct did not convey a particularized message with a great likelihood of being understood by those who viewed it. Even if, as Lang argues, a generally politically charged environment existed, Lang's noise-making conduct at Lachiondo's residence in a neighborhood did not convey a particularized message.

Lang relies on case law in other jurisdictions that held horn honking is expressive conduct; however, those cases involve situations where the purpose of the horn honking is understood, such as when summoning a passenger. While some neighbors testified that they assumed that a protest was underway, knowing Lachiondo to be an Ada County Commissioner, a generalized protest does not convey a particularized message, and the evidence does not support a claim that the likelihood was great that Lang's conduct, which included horn honking, conveyed a message that would be understood by those who heard it. Moreover, Lang has not argued that her other noise-making conduct, including using a megaphone siren and playing clips of loud noise, conveyed any message.

Lang argues the statute is overbroad because it allowed the State to prosecute her for "exercising her right to protest against her government." However, Lang was not charged with disturbing the peace for any ideas or messages she may have intended to convey. Lang was charged and convicted because of the noise she and the other protesters made outside of Lachiondo's personal residence. The criminal complaint specifies that the charge was based on "loud or unusual noise and/or tumultuous or offensive conduct to wit: blowing air horns, honking car horns, and screaming." At trial, the video recorded by Lang was admitted and showed Lang and two others yelling, banging a bucket, using air horns, and playing sounds through a speaker and megaphone. Both of Lachiondo's children were in the home. The children testified they were confused and concerned by the sounds, and that the older brother had to care for his younger brother. Lachiondo's mother testified that she heard the noise from approximately five blocks away as she was returning to the house. Lang testified that she specifically went to Lachiondo's house "to be heard." In particular, the following testimony from Lang indicates her intent that evening:

DEFENSE COUNSEL: So Ms. Lang, what time did you go to Diana Lachiondo's house?

| | |
|---|---|
| LANG: | I got there just a couple of minutes before we started, and we started promptly exactly at 5:15. It was our goal to start exactly when the CDH meeting went live. |
| DEFENSE COUNSEL: | So you went there specifically for the meeting? |
| LANG: | Absolutely. |
| DEFENSE COUNSEL: | And you felt that Diana Lachiondo was there? |
| LANG: | I believed she was there. It never occurred to me she wouldn't be there. |
| . . . . | |
| DEFENSE COUNSEL: | In the video you stop banging your drum. Why? |
| LANG: | Because they were walking toward me and seemed a little in their face. You know, I went to Diana's house because I couldn't be heard, and so I made noise to be heard, but I didn't really mean to be in somebody's face as they're approaching me on the street, that just seems pretty rude. |

Lang went to Lachiondo's neighborhood, knew where Lachiondo lived, stood on the sidewalk in front of Lachiondo's house, and began to make loud noises for approximately fifteen to twenty minutes. Regardless of any particular message Lang may have intended, the *noise* generated by Lang was the basis for the State's prosecution against her. The district court was correct to characterize the noise associated with Lang's conduct as nothing more than "racket in a neighborhood." As held in *Poe*, the disturbing the peace statute appropriately regulates noise as it pertains to the peace and quiet of any neighborhood, family, or person. *Poe*, 139 Idaho at 895, 88 P.3d at 714; *cf. State v. Medel*, 139 Idaho 498, 501, 80 P.3d 1099, 1102 (Ct. App. 2003) ("Governments have a legitimate interest in protecting the well-being, tranquility, and peace of their citizens, as well their traditional public forums such as city streets and parks, from excess noise."); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992) (noting that noise is a "noncontent element" when considering a challenge to content-neutral time, place and manner restrictions that incidentally burden speech). While Lang may have attempted to voice her grievances to her local government, the First Amendment does not grant one a license to breach the peace of a neighborhood simply because the intended recipient is a public official.

Lang claims that the disturbing the peace statute precludes constitutionally protected conduct as applied to her case. The State argues that, even if Lang's conduct was sufficiently expressive to come within the scope of the First Amendment, the disturbing the peace statute constitutionally applied to the facts of this case.

Reasonable time, place, or manner restrictions on speech may be upheld if they are justified without reference to the content of the speech, and speech may be proscribed based upon a non-content element, such as noise. *Poe*, 139 Idaho at 894, 88 P.3d at 713. Even in public forums, reasonable time, place, or manner restrictions are allowed if they are content neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

The disturbing the peace statute is content neutral. In *Poe*, the Court held, in the context of a facial overbreadth challenge, that the subpart of I.C. § 18-6409 prohibiting loud or unusual noise regulates "conduct, not pure speech, and [is] neutral with respect to the content of any expressive element of such conduct that may exist in a particular circumstance." *Poe*, 139 Idaho at 895, 88 P.3d at 714. The Court in *Poe* noted that nonverbal expressive activity can be banned because of the action it entails as long as such ban is unrelated to the ideas it expresses. *Id*. at 893-94, 88 P.3d at 712-13. The statute gives sufficient guidelines regarding the type of conduct that is involved and the requirement that the defendant must maliciously and willfully disturb the peace in one of the ways specified provides adequate standards to protect against arbitrary and discriminatory enforcement. *Id*. at 903, 88 P.3d at 722.

The prohibition against maliciously and willfully disturbing the peace of others is narrowly tailored to serve a significant governmental interest. The government "ha[s] a substantial interest in protecting its citizens from unwelcome noise." *Ward*, 491 U.S. at 796. This interest is greatest when the government seeks to protect the well-being, tranquility, and privacy of the home. *Id*. The disturbing the peace statute applies to anyone who "maliciously and willfully disturbs the peace and quiet of any neighborhood, family or person." I.C. § 18-6409. The statute is narrowly tailored to serve a significant governmental interest.

Idaho Code § 18-6409 leaves open ample channels of communication. The statute does not attempt to ban any particular manner or type of expression at a given place or time. *Ward*, 491 U.S. at 802. Even if Lang's conduct was communicative of a message, and the statute contains some limitation, there are ample avenues of communication.

The magistrate court's decision to deny Lang's renewed motion to dismiss is supported by substantial and competent evidence. Further, the magistrate court properly applied I.C. § 18-6409 because the statute's prohibition against "loud or unusual noise" bans nonverbal conduct and is unrelated to any expressive element of such conduct. Moreover, the disturbing the peace statute

7

does not preclude constitutionally protected conduct as applied to Lang's case. Therefore, the statute is not overbroad as applied to Lang's conduct. The district court did not err in affirming the magistrate court's denial of Lang's renewed motion to dismiss.

## IV.

## CONCLUSION

The order of the district court affirming the magistrate court's denial of Lang's renewed motion to dismiss is affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.