# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47440

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, April 2021 Term |
| | ) | |
| v. | ) | Opinion filed: May 27, 2021 |
| | ) | |
| THOMAS REESE CARTWRIGHT, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Cynthia K.C. Meyer, District Judge.

The judgment of the district court is affirmed.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Appellant. Ben McGreevy argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kenneth Jorgensen argued.

_____

MOELLER, Justice

Thomas Reese Cartwright ("Cartwright") appeals his judgment of conviction for felony enticing a child through the use of the internet. Police arrested Cartwright outside a 7-11 convenience store, where he was attempting to meet a 14-year-old girl with whom he had been exchanging sexual messages. In reality, the girl was an undercover detective. Cartwright argues the district court erred when it denied his motion to dismiss because Idaho Code section 18-1509A is unconstitutionally overbroad on its face. Cartwright also argues the district court erred when it refused to instruct the jury on entrapment. For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Officers with the Internet Crimes Against Children Task force conducted an operation in the Post Falls area to apprehend adults who were "trying to link up with underage people for sexual reasons." Using an undercover profile—a 14-year-old girl named "Kaylee"—Detective

1

Jeff Bickford ("the detective") created a post on the social media app Whisper,[1] showing a stock photo of a feminine face and the superimposed words "Lonely and alone. Can't wait til I'm older and people won't judge." Cartwright replied by private message under the username "Big Bad Wolf 17."

Cartwright and the detective exchanged instant-messages on an app known as "Whisper." The detective tried to use language the way a teenager would; for example, he intentionally misspelled words, used frequent abbreviations, omitted punctuation, and made typos.[2] The messaged conversation began as follows:

| | |
|---|---|
| Cartwright: | How bored[?] |
| "Kaylee": | Like I wish I want alone |
| Cartwright: | How old are you |
| "Kaylee": | Almost 15 |
| Cartwright: | Yikes |
| | Glad I didn't invite you over |
| "Kaylee": | Why. . .that be fun |
| | But Whatever |
| Cartwright: | What would be fun ? |
| "Kaylee": | Coming over |
| Cartwright: | Talk to me |
| | Send me a face pic please |
| "Kaylee": | Why u said u didn't want me to come over |
| Cartwright: | Maybe I will change my mind |
| "Kaylee": | Whatev |

The detective sent Cartwright an age regression photograph of a female detective. "Cute," Cartwright replied and then asked, "And if you came over what we do?" He sent the detective a selfie. The detective suggested they switch to text messaging by cell phone—a technique used to allow law enforcement to identify people by their phone numbers—but Cartwright continued the chat on Whisper:

| | |
|---|---|
| Cartwright: | Where are your parents |
| "Kaylee": | Kennewick |
| | I'm at my ants |
| | . . . |
| Cartwright: | Are you submissive |
| | You do know I'm 53 right |
| "Kaylee": | Holy shit |

---

[1] Whisper allows users to post anonymous messages, which other users can reply to publicly or by sending the poster a private message.

[2] Obvious spelling and grammatical errors in the content of the messages will not be corrected or signaled with a "[sic]" unless necessary to clarify context.

| | The last guy was like 45 |
|---|---|
| Cartwright: | What last guy |
| "Kaylee": | Tex please |
| Cartwright: | Your not a cop are you |
| "Kaylee": | Omg I'm sorry, I didn't no u were a cop. Gotta go…I won't do it again…sorry |
| Cartwright: | No are you |
| "Kaylee": | Lol…totally didn't understand…no |
| | . . . |
| "Kaylee": | And I'm not into handcuff and freaky weird shit if that's what u want. Im normal |
| | . . . |

"Kaylee" said the Whisper app kept crashing, so Cartwright began texting to the phone number the detective had provided instead. He asked if she had done anything sexually with the 45-year-old man she mentioned before. When "Kaylee" admitted that she had, Cartwright asked for specifics, but she told him she had promised to never tell. Only then did Cartwright ask for her name. Then he asked again, "And if you came over what we do?" before introducing himself by his middle name, Reese, and promising he was "not a creeper." He asked again what she would tell her aunt. "Kaylee" said she did not want to get hurt, and Cartwright answered, "I won't hurt you . . . I have done this before but no one as young as you." He noted that the app showed she was only two miles away. He asked if she liked to cuddle and what she had planned for tomorrow. He told her she could come over during the day.

Cartwright next suggested they talk on the phone, so a female officer called Cartwright, pretending to be "Kaylee." On the phone, "Kaylee" sounded uncomfortable, saying quietly that talking was awkward, but Cartwright pressed her with questions about meeting: "Well, it would be fun to have you here. We could hang out. That would be nice. Right?" He asked again if she liked to cuddle and suggested they could watch the Disney movie *Beauty and the Beast* together. Then Cartwright turned the conversation to the sexual part of their text exchange, saying, "So when I asked you if you were submissive, you thought it was all about handcuffs and all that? No, it's not all about that, but that's okay. . . . For me it's more of a lifestyle than anything. It's not all that 50 Shades of Gray stuff . . . ." He said he could send an Uber or Lyft to her house to get her the next day while her aunt was at work. Then "Kaylee" said she felt too awkward on the phone and asked if they could return to texting.

The text conversation resumed with Cartwright suggesting again that 14-year-old "Kaylee" could come over to his place. He described landmarks near his house and suggested

they meet. "Kaylee" said she was excited to meet, and when Cartwright offered to meet and talk first, she said, "just meet…that's boring." Cartwright said that he was trying to work with her. He promised again that she would not get hurt and said, "Let's meet and go from there."

"Kaylee" then told Cartwright about a friend of hers who had become pregnant. Cartwright responded:

| Cartwright: | Well I don't plan on doing that |
| | Where do you want to meet |
| "Kaylee": | how can u be sure |
| | promise me |
| Cartwright: | Maybe we won't even do that |
| | Yes I promise |
| | Where are we meeting |

"Kaylee" asked Cartwright, "whats ur fav[?]" Cartwright again replied, "Let's meet somewhere." "Kaylee" told him again she was not "into handcuffs and weird stuff" and he assured her that he did not have any handcuffs and he would not hurt her. Again, he told her, "Well the first step is meeting[.]"

Then, the following exchange took place, in which "Kaylee" made obliquely sexual comments, which Cartwright consistently interpreted as sexual and answered accordingly:

| "Kaylee": | thats sooo nice…i'm totaly up for anything so long as u dont hurt me |
| | r u big guy? |
| Cartwright: | I should actually get to bed unless you want to meet |
| "Kaylee": | wish i could see |
| Cartwright: | Big as in ? |
| "Kaylee": | u serious…OMG |
| Cartwright: | I'm thick yes |
| "Kaylee": | show me |
| Cartwright: | About 6 inches |
| "Kaylee": | last guy was skiny |
| Cartwright: | And Who was that |
| | I'm not hard at the minute |
| | Are we meeting some where public or what |
| "Kaylee": | that sux |
| Cartwright: | Are you wet |
| "Kaylee": | i was…i had some weird tingles. . .kinda nice…i like this but just wanna be safe and not fuck my life up |
| Cartwright: | I'm not going to |
| "Kaylee": | OMG i took a good showr tho |

An explicit conversation followed in which Cartwright asked "Kaylee" to make a specific sexual request and to say "please, sir" in requesting it. Cartwright then discussed his favorite sexual position and explained to "Kaylee" how it worked. "Kaylee" again expressed concerns about becoming pregnant:

> "Kaylee": promis i wont get preg
> Cartwright: No I have condoms or I can pull out
> If you want to meet in public we need to do it soon
> . . .

"Kaylee" agreed to meet Cartwright outside a convenience store. Around midnight, Cartwright walked nearly a mile in the worst blizzard of the year, sub-zero temperatures, and snow drifts to get to the 7-11. When he arrived, he texted "Kaylee" that he would buy her a hot chocolate. "Just pretend I'm your grandpa," he wrote. Officers met Cartwright outside the store and arrested him. The arresting officer asked if Cartwright knew what this was about, and Cartwright answered, "Yeah I was speaking to a fifteen-year-old girl. Supposedly." After the arrest, the detectives heard him mutter, "Stupid, stupid, stupid." Cartwright was in possession of the cell phone, which was later shown to contain the Whisper app messages and text messages set forth above.

In a subsequent police interview, in which Cartwright was read his rights and consented to be interviewed, Cartwright first claimed he had no sexual intentions behind attempting to meet "Kaylee." However, upon further questioning, he answered, "Would sex have happened? Yes. But it wasn't going to happen right away. Like it, it wasn't going to be as soon as you walk in my door we're having sex. I wouldn't do that." Cartwright also acknowledged that when he had asked "Kaylee" during the text conversation if she was "submissive," he meant the question in a sexual context.

During the trial, Cartwright testified in his own defense, describing his lonely state of mind. He acknowledged previously having met women online for sex, including four times in the past month, though he stated he had never met with anyone underage. He also claimed that he could not actually have had sex with "Kaylee" because he has "low testosterone and erectile dysfunction." Nonetheless, on cross-examination, Cartwright acknowledged that his intention in communicating with people online generally was to meet for sex. Cartwright also admitted that from the beginning of his conversation with "Kaylee" he knew what he was doing was wrong because he intended to talk to a 14-year-old child about sex. Additionally, he conceded that he

5

continually drove the conversation in a sexual direction even though he was aware that "Kaylee" was supposedly a child.

**B. Procedural History**

The State charged Cartwright by superseding indictment with felony enticing a child through use of the internet, under Idaho Code section 18-1509A. Cartwright entered a plea of not guilty. Prior to trial, Cartwright filed a motion to dismiss on the grounds that section 18-1509A was "overbroad on its face because it targets and criminalizes statements and conduct entitled to protection under the First Amendment." Cartwright argued that incorporating Idaho Code section 18-1506, which he states prohibits "*all* physical contact with a minor" under the age of sixteen, renders section 18-1509A unconstitutional. After a hearing, the district court denied the motion to dismiss, concluding that Cartwright had "failed to show § 18-1509A proscribes a substantial amount of constitutionally protected conduct." The district court determined that construing section 18-1506 in conjunction with section 18-1509A sufficiently narrowed the conduct proscribed by the statute.

Prior to the trial, Cartwright submitted a proposed jury instruction concerning entrapment. The district court ultimately refused to instruct the jury on the entrapment defense. It also refused to allow Cartwright to make any statements during the trial related to entrapment. The district court stated that Cartwright had failed to show the entrapment instruction was appropriate because he could not demonstrate that the intent to commit the crime—and not just the opportunity—had come from the State or its agents.

The jury found Cartwright guilty, and the district court sentenced Cartwright to an indeterminate term of ten years, with three years fixed. Cartwright timely appealed.

## II. ANALYSIS

**A. Idaho Code section 18-1509A is not unconstitutionally overbroad on its face.**

The district court denied Cartwright's motion to dismiss the indictment for constitutional overbreadth of the underlying statute under the First Amendment. Cartwright argues that Idaho Code section 18-1509A is unconstitutionally overbroad on its face because it proscribes a substantial amount of conduct protected by the First Amendment. Section 18-1509A incorporates by reference portions of section 18-1506, which Cartwright asserts criminalizes any physical contact between a minor child and another person, as well as the making of any photographic or electronic recordings of a minor child, so long as the party has the requisite intent, and that this

includes a substantial amount of constitutionally protected conduct. Cartwright claims that, by incorporating these overly broad provisions from section 18-1506, section 18-1509A is unconstitutionally overbroad.

"[C]onstitutional questions and questions of statutory interpretation are questions of law, [therefore] this Court exercises free review over both." *State v. Sanchez*, 165 Idaho 563, 567, 448 P.3d 991, 995 (2019) (quoting *Stuart v. State*, 149 Idaho 35, 40, 232 P.3d 813, 818 (2010)). In cases challenging the constitutionality of a statute

> [t]here is a presumption in favor of the constitutionality of the challenged statute or regulation, and the burden of establishing that the statute or regulation is unconstitutional rests upon the challengers. An appellate court is obligated to seek an interpretation of a statute that upholds it [sic] constitutionality. The judicial power to declare legislative action unconstitutional should be exercised only in clear cases.

*Id.* (quoting *Stuart,* 149 Idaho at 40, 232 P.3d at 818).

The First Amendment to the Constitution of the United States applies to the states through the Fourteenth Amendment and protects actual speech as well as symbolic and expressive conduct. *Sanchez*, 165 Idaho at 568, 448 P.3d at 996. The United States Supreme Court has observed that a person who alleges a statute is facially overbroad does not need to demonstrate that the criminalized conduct could not be regulated by a constitutionally narrow statute. *Broadrick v. Oklahoma,* 413 U.S. 601, 612 (1973). In other words, "[l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.*

We apply a two-part test to determine if a statute is unconstitutionally overbroad: (1) does the statute regulate constitutionally protected conduct, and (2) does the statute preclude a significant amount of that constitutionally protected conduct. *State v. Manzanares*, 152 Idaho 410, 423–24, 272 P.3d 382, 395–96 (2012). "Only if the statute intrudes upon a *substantial amount* of constitutionally protected conduct may it be struck down for overbreadth." *Id.*

> [A] statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications. Rather, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.

*Id.* To this end, the United States Supreme Court has cautioned that the overbreadth doctrine is "strong medicine" to be employed "only as a last resort" when a limiting construction cannot be

applied to the statute. *Broadrick,* 413 U.S. at 613. This caution is even stronger where a statute addresses behavior rather than pure speech:

> [F]acial overbreadth adjudication is an exception to our traditional rules of practice and . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.

*Id.* at 615.

Cartwright's argument deals only with the portions of sections 18-1506 that address conduct which could be deemed expressive, namely, the touching or photographing of minors for nonsexual purposes. Therefore, our analysis centers on whether Idaho Code section 18-1509A proscribes such a substantial amount of protected conduct that it actually risks deterring legitimate, protected behavior. In other words, for a court to apply the "strong medicine" of the overbreadth doctrine, Cartwright must show that the risk the statute will deter constitutionally protected conduct is real.

Section 18-1509A is entitled "Enticing a Child Through Use of the Internet or Other Communication Device." It provides in relevant part:

> A person aged eighteen (18) years or older shall be guilty of a felony if such person knowingly uses the internet or any device that provides transmission of messages, signals, facsimiles, video images or other communication to solicit, seduce, lure, persuade or entice by words or actions, or both, a person under the age of sixteen (16) years or a person the defendant believes to be under the age of sixteen (16) years to engage in any sexual act with or against the person where such act would be a violation of chapter 15, 61 or 66, title 18, Idaho Code . . . .

I.C. § 18-1509A(1). The chapters of the Idaho Code referenced here are read, for the purposes of this case, only as they relate to knowingly using the internet or an electronic device to entice a child to engage in certain sexual acts. Cartwright argues that section 18-1509A's express identification of chapter 15, title 18 of the Idaho Code incorporates section 18-1506, which defines sexual acts in an overly broad manner:

(1) It is a felony for any person eighteen (18) years of age or older, with the intent to gratify the lust, passions, or sexual desire of the actor, minor child or third party, to:

    (a) Solicit a minor child under the age of sixteen (16) years to participate in a sexual act;

    (b) Cause or have sexual contact with such minor child, not amounting to lewd conduct as defined in section 18-1508, Idaho Code;

    (c) *Make any photographic or electronic recording of such minor child;* or

    (d) Induce, cause or permit a minor child to witness an act of sexual conduct.

(2) For the purposes of this section "solicit" means any written, verbal, or physical act which is intended to communicate to such minor child the desire of the actor or third party to participate in a sexual act or participate in sexual foreplay, by the means of sexual contact, photographing or observing such minor child engaged in sexual contact.

*(3) For the purposes of this section "sexual contact" means any physical contact between such minor child and any person, which is caused by the actor, or the actor causing such minor child to have self contact.*

(4) For the purposes of this section "sexual conduct" means human masturbation, sexual intercourse, sadomasochistic abuse, or any touching of the genitals or pubic areas of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification.

(5) Any person guilty of a violation of the provisions of this section shall be imprisoned in the state prison for a period not to exceed twenty-five (25) years.

(Emphasis added). According to Cartwright, section 18-1506(1)(c) criminalizes the making of *any* photographic or electronic recording of a child so long as it is made with the requisite intent, effectively criminalizing a state of mind. Cartwright also argues that section 18-1506(3), which defines sexual contact as "any physical contact between such minor child and any person" prohibits even mundane forms of contact, like a high five or a pat on the back, so long as the party has the requisite intent; again, Cartwright argues this criminalizes a state of mind. Therefore, Cartwright asserts, section 18-1509A is facially overbroad because the sexual acts it prohibits, as defined in section 18-1506, include a substantial amount of protected conduct in its sweep.

9

Regardless of whether Idaho Code section 18-1506 contains language that may be overly broad, in this case we consider that language only as it relates to the purpose of the primary charging statute—section 18-1509A—and its prohibition of knowingly enticing children to engage in sexual acts. In other words, we ask, is it unconstitutional to proscribe physical contact or the taking of a picture when the party is knowingly enticing a child to engage in a sexual act?

We find useful similarities between the present case and *State v. Richards*, 127 Idaho 31, 896 P.2d 357 (Ct. App. 1995), in which the Idaho Court of Appeals rejected a facial overbreadth challenge to a statute that proscribed harassing phone calls. The Court of Appeals held that the statute was not overbroad because it only criminalized conduct where someone made a phone call with the intent to "annoy, terrify, threaten, intimidate, harass or offend." *Richards*, 127 Idaho at 36, 896 P.2d at 362 (quoting I.C. § 18-6710(1)). According to the *Richards* court, while a phone call is constitutionally protected conduct, a phone call made with the intent to harass is not. *Id.* The *Richards* court concluded:

> If, in the far reaches of imagination, it is possible to conceive of applications of I.C. § 18–6710 that would impermissibly infringe upon free speech, such potential does not render the statute substantially overbroad, for it is obvious that the act "covers a whole range of easily identifiable and constitutionally proscribable . . . conduct."

*Id.* at 37, 896 P.2d at 363 (quoting *Secretary of State of Maryland v. J.H. Munson Co.,* 467 U.S. 947, 964–65 (1984)).

Here too, section 18-1509A covers easily identifiable and constitutionally proscribable conduct. Cartwright hypothesizes that incorporating the language of section 18-1506 into section 18-1509A might lead to unconstitutional applications. For example, because section 18-1506 defines sexual contact as any physical contact between a minor child and another person, Cartwright cautions this could lead to the criminalization of an adult text-messaging a child about wanting to give them a high five or a pat on the back. Similarly, Cartwright asserts that an adult who takes an innocent photograph of a child could be accused of having sexual intent, effectively criminalizing an impure thought absent any criminal action. In support of his argument, Cartwright points to *State v. Bonner*, 138 Idaho 254, 61 P.3d 611 (Ct. App. 2002), in which the Idaho Court of Appeals struck down a statute as overbroad because it contained nearly the same language as one of the provisions at issue here—it proscribed the making of "any

10

photographic or electronic recording of [a] minor child" when done "with the intent of arousing, appealing to or gratifying the lust, passion, or sexual desires of such person, minor child, or third party[.]" 138 Idaho at 256, 61 P.3d at 613 (quoting I.C. § 18-1508A(1)(d)). The *Bonner* court held that the statute criminalized potentially any type of photograph or recording, while the only limitation supplied was that the image or recording be made with the intent to arouse lust or passion. *Bonner*, 138 Idaho at 259, 61 P.3d at 616. According to the Court of Appeals, this amounted to an unconstitutional ban on thought. *Id.*

We make no comment on the constitutionality of Idaho Code section 18-1506, which contains statutory language similar to that the Court of Appeals struck down in *Bonner*. However, we observe there is a critical difference between that statutory language discussed in *Bonner* and the statute discussed here. As the district court noted:

> Idaho Code § 18-1506's proscription of "any physical contact between such minor child and any person, which is caused by the actor, or the actor causing such minor child to have self contact," *when read in isolation*, appears to be overbroad. However, construing the statute as a whole, in conjunction with Idaho Code § 18-1509A, Idaho Code § 18-1509A significantly narrows the sweep of the statute to conduct that is legitimately proscribed by the State.

(Emphasis in original). We agree. When read together, the legal effect of funneling section 18-1506's language through the *additional* intent requirement of section 18-1509A requires not just the intent of sexual arousal, but a knowing use of the internet or an electronic device to entice a child to engage in sexual conduct.

As the *Richards* court concluded that a phone call made with the intent to harass is not protected conduct under the First Amendment, we conclude that physical contact with a child is not protected conduct where it is merely *an element* of the crime defined in section 18-1509A of knowingly enticing a child over the internet or a communications device *for the purpose of engaging in sexual behavior*. Likewise, the taking of an innocuous photograph of a child is not criminalized under section 18-1509A unless the party knowingly entices the child to be in the photograph in order to get them to engage in a sexual act. Section 18-1509A does not proscribe the *act constituting the enticement*; rather, it proscribes the *object of the enticement*. In other words, it clearly targets enticement of minors by focusing on the intent to engage in sexual activity with a child, not the means by which the child is lured. Thus, the statute is not a general ban on photographing children playing in a park or giving high fives to a tee-ball player; section 18-1509A would only criminalize this type of conduct if a child were knowingly enticed online

11

or over a device to participate in the conduct in order to satisfy a party's sexual desire. We conclude section 18-1509A does not criminalize the type of expressive conduct protected by the First Amendment.

Moreover, at the suppression hearing below, the district court found: "Defendant did not provide additional examples or further develop his argument as to how Idaho Code § 18-1509A proscribes a *substantial amount* of constitutionally protected conduct." (Emphasis in original). Again, we agree. In the "far reaches of the imagination" it might be possible to hypothesize that an adult could be accused of seeking sexual gratification by texting a minor, simply for the purpose of "patting him on the back" or "taking her picture"; however, experience and reason suggest this is not the type of conduct prosecuted under the statute. Indeed, sad experience informs us when such an actor actually meets with a child, the intended conduct is much more nefarious. In the absence of any reasonable assertion that commonplace expressive conduct has been criminalized by section 18-1509A, the record does not support the conclusion that enforcement of the statute has any chilling effect on a substantial amount of protected First Amendment conduct.

Applying the *Manzanares* two-part test, we conclude that Idaho Code section 18-1509A does not "regulate constitutionally protected conduct," and even if it did, the amount of the constitutionally protected conduct would be miniscule. *Manzanares*, 152 Idaho at 423–24, 272 P.3d at 395–96. Cartwright has failed to show the statute actually deters a substantial amount of constitutionally protected conduct, if any. Thus, we affirm the district court's determination that Idaho Code section 18-1509A is not constitutionally overbroad under the First Amendment.

**B. The district court did not err when it determined that an entrapment instruction was not justified.**

The district court refused to instruct the jury on entrapment, determining that Cartwright had failed to prove there was substantial evidence the State had persuaded him to commit the offense against his disposition. Cartwright asserts the district court's conclusion is a reversible error.

Whether a jury was properly instructed is a question of law over which this Court exercises free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). "[T]he correctness of a jury instruction depends on whether there is evidence at trial to support the instruction." *State v. Barton*, 154 Idaho 289, 290, 297 P.3d 252, 253 (2013). An error in jury

instructions constitutes reversible error where it misled the jury or prejudiced the party challenging the instruction. *Severson* 147 Idaho at 710, 215 P.3d at 430.

"[E]ntrapment . . . occurs when an otherwise innocent person, not inclined to commit a criminal offense, is induced to do so by a government agent who, desiring grounds for prosecution, originates the criminal design and implants in the mind of the innocent person the disposition to commit the alleged offense." *State v. Canelo,* 129 Idaho 386, 391, 924 P.2d 1230, 1235 (Ct. App. 1996). Inducing criminal behavior is distinct from merely providing the opportunity to commit a criminal act. *State v. Kopsa,* 126 Idaho 512, 519, 887 P.2d 57, 64 (Ct. App. 1994); *State v. Mata,* 106 Idaho 184, 186, 677 P.2d 497, 499 (Ct. App. 1984). "There is a distinction between originating the idea for an offense and merely furnishing the opportunity to commit it. The latter is not entrapment; rather, it is a legitimate method of ferreting out crime." *Id*. *See also Canelo,* 129 Idaho at 392, 924 P.2d at 1236; *Kopsa,* 126 Idaho at 519, 887 P.2d at 64. Accordingly, in order to prove the district court erred in failing to instruct the jury on entrapment, Cartwright must show there was substantial evidence that the State induced him to act criminally when he would not have done so otherwise. *See State v. Ingram*, 138 Idaho 768, 772–73, 69 P.3d 188, 192–93 (Ct. App. 2003) ("Entrapment occurs when an otherwise innocent person, not inclined to commit a criminal offense, is induced to do so by a state agent who, desiring grounds for prosecution, originates the criminal design and implants in the mind of the innocent person the disposition to commit the alleged offense.").

Cartwright contends that the messages from the detective contained sexual innuendo, which amounted to substantial evidence the State implanted in his mind the inclination to entice a minor over the internet to engage in a sexual act. Thus, Cartwright claims, the entrapment instruction should have been given. However, the district court found little support for Cartwright's argument, observing that, although comments from the detective may have been sexually suggestive, they were also "pretty open-ended." The district court concluded there was little evidence that Cartwright had been induced to entice "Kaylee" when he was not already inclined to do so.

We agree that the evidence does not support a theory of entrapment. The message on the original post Cartwright responded to—"Can't wait til I'm older and people won't judge"— strongly suggested that "Kaylee" was underage. In the first moments of the messaging exchange on Whisper, after Cartwright learned of "Kaylee's" age—supposedly 14 years old—he

13

responded "Yikes[.] Glad I didn't invite you over[.]" During his trial testimony, Cartwright acknowledged that he said "yikes" because he knew the situation had the potential to get him in legal trouble, because he intended to talk to the 14-year-old girl about sex. In other words, within the first fifteen words of their exchange, Cartwright had sex in mind.

Minutes later, Cartwright asked "Kaylee" if she was "submissive." He admitted later that he meant the question in a sexual context, and that he wanted to get the girl talking about sex. As if it were a reasonable justification for asking a child such a question, Cartwright testified that he usually asks if a person is submissive when he is on apps like Whisper so that he can determine if the conversation will lead to sex. In other words, he asked "Kaylee" if she was submissive— while believing that she was 14 years old—so he could determine if their conversation would lead to sex. A few minutes later in the messaging Cartwright asked, "Your not a cop are you[?]" [sic]—effectively acknowledging that he knew he was engaging in illegal conduct with a minor. Yet even when the detective provided Cartwright with an opportunity to exit the conversation— by "Kaylee" responding, "Omg I'm sorry, I didn't [know] u were a cop. Gotta go…I won't do it again…sorry"—Cartwright kept talking to her.

He kept pushing her to talk with him about sex. When "Kaylee" mentioned having had a 45-year-old friend before, Cartwright wanted to know what she had done with him sexually. When "Kaylee" expressed fear and anxiety about getting hurt if she and Cartwright met, Cartwright told her not to worry; he had done this before "but no one as young as you[.]" He offered to send an Uber or Lyft to pick her up at her aunt's house. He demonstrated that he was in control of the situation by telling "Kaylee" to make an explicit sexual request and to call him "sir" when requesting it. He attempted to assuage her concerns about pregnancy by telling her he could bring condoms or could "pull out" when they had sex. Again and again during the messaged conversation, Cartwright asked where and when they were meeting. When police interviewed Cartwright after his arrest, he acknowledged that his intention in meeting "Kaylee" was to have sex with her, even though he knew she was a child.

To show that an entrapment instruction should have been given, Cartwright needed to point to evidence in the record which suggested the detective induced him to engage in a criminal act, contrary to his innocent predisposition. The evidence does not show this. If anything, the messages show Cartwright to have had a singular, sexual interest in "Kaylee" from the first words he typed. He admitted as much in cross examination. Further, the messages show

14

he was not content to just *talk* with "Kaylee" about sex. The record is clear that Cartwright was attempting to persuade a 14-year-old child to meet with him for the purpose of having sex. "Kaylee" did not induce Cartwright to commit this crime; he was clearly predisposed to do so from the beginning.

Even if the comments made by "Kaylee" are viewed as sexual innuendo, Cartwright's side of the conversation was not that of an innocent man being pushed to act against his disposition. Black's Law Dictionary defines "innuendo" as: "an oblique remark or indirect suggestion . . ." BLACK'S LAW DICTIONARY (10th Ed. 2014). While many of "Kaylee's" words had two meanings, Cartwright consistently chose to interpret them in a sexual manner. In fact, a fair reading of the conversations suggests that the oblique sexual connotations in "Kaylee's" words were consistent with a 14-year-old following the adult's lead in engaging in talk about sex, rather than implanting the idea for the criminal conduct in the adult's mind. Thus, while "Kaylee" clearly provided Cartwright with the opportunity to commit the charged crime, "she" did not induce him to do so. *See Ingram*, 138 Idaho at 772–73, 69 P.3d at 192–93.

We conclude that the district court acted properly in determining Cartwright failed to establish that the evidence supported a theory of entrapment. Accordingly, we affirm the district court's decision to decline to instruct the jury on the entrapment defense.

### III. CONCLUSION

For the forgoing reasons, this Court concludes that Idaho Code section 18-1509A is not unconstitutionally overbroad in violation of the First Amendment. Further, we conclude that the district court did not err when it refused to instruct the jury on an entrapment defense. The judgment of conviction is affirmed.

Chief Justice BEVAN and Justices BURDICK, BRODY and STEGNER **CONCUR.**