## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 53369

STATE OF IDAHO, )
)
      Plaintiff-Respondent, )      **Boise, April 2026 Term**
)
v. )      **Opinion Filed: May 29, 2026**
)
)      **Melanie Gagnepain, Clerk**
JESSICA ANNE VAZQUEZ, )
)
      Defendant-Appellant, )
_____)

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Ned Williamson, District Judge.

The judgment of the district court is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Jacob Westerfield argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kacey Jones argued.

_____

BEVAN, Chief Justice.

This appeal concerns what evidence the State may use to rebut an entrapment defense. Specifically, whether the State can introduce evidence of a defendant's conduct after the events giving rise to the charges to show that a defendant was ready and willing to engage in criminal conduct prior to being contacted by the government.

Jessica Anne Vazquez appeals from her conviction for trafficking in methamphetamine and delivery of heroin. Vazquez's charges arise from a drug sale to a confidential informant ("CI") on December 1, 2020. At trial, Vazquez did not dispute that she sold heroin or trafficked methamphetamine and instead raised an entrapment defense. The State presented a variety of evidence to rebut Vazquez's defense, including an exhibit containing text messages between her and the CI dating from December 2020 until June 2021. The district court admitted those text messages over Vazquez's objection on relevancy and foundational grounds. The jury ultimately

1

convicted her of both charges. The district court subsequently sentenced Vazquez to eight years imprisonment with three years fixed for the trafficking charge consecutive to a one-year fixed sentence for the delivery charge.

On appeal, Vazquez asserts that the district court erred in admitting the text messages because they were not relevant to her entrapment defense and their probative value was substantially outweighed by their prejudicial effect. She argues that the text messages only show her state of mind after her first conversation with the CI and have no bearing on whether she lacked the disposition to sell controlled substances prior to that contact. Finally, Vazquez argues that the district court abused its discretion in sentencing her.

The Idaho Court of Appeals affirmed the district court, holding that the text messages were relevant to rebut Vazquez's entrapment defense and that the district court did not abuse its discretion in admitting them. Further, the Court of Appeals upheld Vazquez's sentence. This Court subsequently granted Vazquez's petition for review.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2020, Vazquez sold approximately 84 grams of methamphetamine and a gram of heroin to a CI working for the Blaine County Sheriff's Office (the "controlled buy").[1] Following the controlled buy, on June 25, 2021, a grand jury returned an indictment charging Vazquez with two felony counts for violating Idaho Code section 37-2732B(a)(4)(A), trafficking in methamphetamine, and Idaho Code section 37-2732(a)(1)(A), delivery of heroin. The matter proceeded to a three-day jury trial beginning November 1, 2021. At trial, Vazquez did not contest that she sold drugs to the CI at the controlled buy and instead raised an entrapment defense, arguing that her criminal conduct was the product of governmental persuasion.

Vazquez and the CI had a brief history together before the events leading to her charges. They first met in December 2019 and, around that time, used drugs together and engaged in a sexual relationship. Not long after they met, Vazquez and the CI had a falling out, broke off contact, and went their separate ways. Vazquez, a registered nurse, subsequently went to New York City to assist in the early response to the COVID-19 pandemic and to remove herself from drugs and drug users. The CI remained in Idaho and, in his own effort to remove himself from

---

[1] A "controlled buy" is the "purchase of contraband by an undercover officer or an informant for the purpose of setting up an arrest of the seller." *Controlled Purchase*, BLACK'S LAW DICTIONARY (12th ed. 2024).

drugs and drug users, approached the Blaine County Sheriff's Office Narcotics Enforcement Team to be a confidential informant.

Vazquez returned to Idaho in May 2020. Shortly after her return, the CI—now working with the Blaine County Sheriff's Office—reached out to Vazquez. The CI called and texted Vazquez a number of times on June 10 and 18, but Vazquez did not respond. After more calls and texts on September 5 and 6, Vazquez and the CI finally began a dialogue. Following this first conversation, Vazquez and the CI communicated regularly via text and phone calls for the next few months leading to the controlled buy. In addition to the texts and calls, the CI also stayed the night at Vazquez's home in Boise and the two spent a night together in Mountain Home. According to Vazquez, her conversations with the CI always included him asking her for drugs. Ultimately, even though Vazquez testified that she "didn't really want to," she agreed to sell the CI drugs.

The CI organized a controlled buy with Vazquez on December 1, 2020. The CI asked Vazquez for four ounces of methamphetamine and "a little bit of heroin." On the evening of the controlled buy, Vazquez met the CI in the parking lot of a convenience store in Bellevue, Idaho, got into his car, and drove to a more secluded location at a nearby auto repair shop. Vazquez weighed around three ounces of methamphetamine on a digital scale she brought with her, bagged it with a small amount of heroin, and gave it to the CI. The CI paid Vazquez $1,000 for the drugs and they returned to her vehicle before the CI left to report back to the Sheriff's Office.

In addition to Vazquez's and the CI's testimony, the State also recorded the controlled buy with a hidden camera placed in the CI's vehicle. That recording captured Vazquez apparently boasting about her access to drugs through a friend, saying "he's got . . . bomb connects, you know what I mean" and that "him and I together, we do some shit." She also expressed frustration with another individual, Tom, who she asserted owed her $2,000 and had been "getting . . . drugs somewhere else."

The CI testified that he did not have to persuade Vazquez to sell him drugs. He stated that he did not pressure Vazquez, threaten her, or promise her anything in return for drugs. During their conversations before the controlled buy, the CI indicated that Vazquez never said "no" to his requests for drugs and did not give any resistance to his requests other than to say she could not get drugs at that time.

Vazquez did not dispute that she sold drugs to the CI at the controlled buy but testified in her defense at trial that she was entrapped into the offense. She stated that she first used

methamphetamine in 2017 and did not have any prior convictions for drug delivery or possession. After she began speaking with the CI in September 2020, Vazquez explained that she viewed the CI as a trusted friend. Vazquez stated that the CI "kept asking" for drugs during the three months before the controlled buy. That said, Vazquez confirmed that the CI never threatened her or used force on her to obtain drugs. Vazquez stated that after she agreed to the sale, the CI connected her with the individual from whom she bought the drugs for the controlled buy. Vazquez testified that the communications and attention from the CI persuaded her to sell him drugs out of a desire to "help" a trusted friend. Following her testimony, Vazquez rested her case.

Before the State began its rebuttal and outside the presence of the jury, the parties discussed the State's rebuttal evidence that forms the crux of this appeal. The State sought to admit its Exhibit 22, a series of text messages between Vazquez and the CI that were exchanged after the controlled buy, between December 2020 and June 2021. Generally speaking, Exhibit 22 describes unconsummated drug activity between Vazquez and the CI during the six months after the controlled buy. For instance, the texts indicated Vazquez continued searching for drugs in the weeks following the controlled buy, stating "[i]ts dry everywhere" but that she had "a couple avenues [she was] waiting to hear on." She asked the CI if he had "done any looking?" She also asked the CI if he was able to "help [her] out" to "get rid of" some drugs and "make some cash." The texts appear to show several attempted drug deals that fell through. Most of the texts are undated, but the State conceded at trial that they were all subsequent to the controlled buy. The CI testified that the texts were sent between a week or two after the controlled buy until June 28, 2021.

Vazquez objected to Exhibit 22 on the basis that the messages lacked foundation and that they were irrelevant to the issue of entrapment. The thrust of Vazquez's argument was that the text messages after the controlled buy were irrelevant to show her predisposition to commit the crime. She highlighted the language of Idaho Criminal Jury Instruction 1513, which states that entrapment occurs when "[t]he defendant was not ready and willing to commit the crime before the law enforcement officials spoke with the defendant." I.C.J.I. 1513. In Vazquez's view, whether she was willing to continue selling drugs after the controlled buy was unrelated to whether she was ready and willing to sell drugs before she began speaking with the CI in September 2020.

The State argued that Exhibit 22 was relevant to show both Vazquez's intent to sell drugs absent contact with the CI and to rebut her assertion that she was motivated to do so out of a sense

4

of obligation to the CI's friendship. On intent, the State asserted that Exhibit 22 showed that Vazquez engaged in using and selling drugs "repeatedly, consistently, and constantly," which rebutted her assertion that she would not have sold drugs but for the CI's persuasion. As to motive, the State contended that Exhibit 22 showed that Vazquez was not only concerned about selling drugs to please the CI, but that she also cared a great deal about money.

Ultimately, the district court concluded that Exhibit 22 was relevant to refute Vazquez's entrapment defense. First, the district court determined that admissibility of Exhibit 22 should be analyzed under Idaho Rule of Evidence 404(b). It then rejected Vazquez's argument for a per se rule that would distinguish between evidence prior to the charged offense and evidence arising after the charged offence. Next, the district court rejected the State's argument that Exhibit 22 was relevant to prove motive. However, the district court found the evidence relevant to intent, at least as far as intent is involved in an entrapment defense. The district court reasoned that an entrapment defense asserts that a defendant's criminal intent is a product of state action and that the crime would not have been committed but for the CI's pressure. Viewed this way, the district court concluded that Exhibit 22 tended to diminish the probability that Vazquez's participation in the controlled buy was a product of the CI's persuasion instead of her own desire to sell drugs.

Further, the district court conducted a Rule 403 balancing test, stating that it had the discretion to do so. It reasoned that Exhibit 22 was relevant to refute the entrapment defense and that it was not unfairly prejudicial because, by raising an entrapment defense, a defendant "opens up the gates considerably on a person's disposition to do, in this case, a drug sale." The district court also noted that it could mitigate the prejudicial effects by instructing the jury that the evidence should only be considered on the "limited issue of refuting the entrapment defense." Subsequently, the district court admitted Exhibit 22 into evidence over Vazquez's objection during the CI's rebuttal testimony.

After the close of evidence, the district court instructed the jury on the entrapment defense and issued a limiting instruction for Exhibit 22. The jury found Vazquez guilty of both charges. The district court then sentenced Vazquez to a term of imprisonment of three years fixed and five years indeterminate for the methamphetamine trafficking charge consecutive to a one-year fixed sentence for the heroin delivery charge.

Vazquez timely appealed.

## II.     ISSUES ON APPEAL

1.  Did the district court err in admitting evidence of uncharged drug-related conduct occurring subsequent to the charged offense?

2.  Did the district court abuse its discretion in sentencing Vazquez to an aggregate sentence of nine years, with four years fixed?

## III.     STANDARDS OF REVIEW

This Court uses a mixed standard of review regarding the admissibility of evidence. *State v. McGrath*, 169 Idaho 656, 662, 501 P.3d 346, 352 (2021) (quoting *State v. Kralovec*, 161 Idaho 569, 574, 388 P.3d 583, 588 (2017)). First, relevancy is a question of law reviewed on a de novo basis. *Id.* (citation omitted). Second, a district court's performance of the balancing test required by Idaho Rule of Evidence 403 is reviewed for an abuse of discretion. *Id.* (citation omitted). Sentencing decisions are likewise reviewed for an abuse of discretion. *Id.* (quoting *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020)).

Abuse of discretion review requires this Court to consider "four essentials." *Jones*, 167 Idaho at 358, 470 P.3d at 1167 (emphasis omitted) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)). Those essentials are "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Id.* (quoting *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194).

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Cook*, 165 Idaho 305, 308, 444 P.3d 877, 880 (2019) (quoting *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016)).

## IV.     ANALYSIS

### A.  The district court properly admitted Exhibit 22.

Preliminarily, we address the scope of this decision. In her briefing, Vazquez doubted that Idaho Rule of Evidence 404(b) applies in circumstances like this case. The State echoed her doubt, stating that "application of Rule 404(b) in this context is unclear." That said, Vazquez clarified her position at oral argument, stating that she did not dispute the application of Rule 404(b) in this case. As such, we have not been asked to address whether the district court should have applied a different framework to admitting Exhibit 22 and, consequently, do not reach a holding as to

whether Rule 404(b) was the appropriate rule to apply. Instead, our analysis is limited to the issues actually raised by the parties regarding the district court's application of Rule 404(b).

Rule 404(b) prohibits admitting evidence of "crime[s], wrong[s], or other act[s]" to prove a person's character trait and that they acted in accordance with that character trait on a particular occasion. I.R.E. 404(b)(1). However, that "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." I.R.E. 404(b)(2). Admitting evidence under Rule 404(b) requires a two-tiered analysis. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). First, there must be enough evidence "to establish the other crime or wrong as fact" and that fact, if established, "must be relevant to a material and disputed issue concerning the crime charged, other than propensity." *Id.* (citations omitted). "Second, the trial court must engage in a balancing under [Rule] 403 and determine whether the danger of unfair prejudice substantially outweighs the probative value of the evidence." *Id.*

Vazquez argues that the district court erred in applying Rule 404(b) for two reasons. First, she contends that Exhibit 22 was irrelevant to the issue of her entrapment defense.[2] Second, she argues that the district court abused its discretion in its Rule 403 balancing.

*1. Exhibit 22 is relevant to rebut Vazquez's entrapment defense.*

Vazquez argues that the district court erred in determining that Exhibit 22 was relevant to disprove her entrapment defense. She contends that entrapment looks to a defendant's state of mind prior to government contact and, since the evidence of the uncharged drug activity in Exhibit 22 occurred after the controlled buy, it cannot show that she had a willingness to sell controlled substances prior to being contacted by the CI. In response, the State maintains that there is no basis to exclude evidence of subsequent bad acts as a bright line rule. Rather, it argues that acts occurring after the charged conduct can be relevant if they relate to a defendant's predisposition to commit the crime. To that end, the State argues the text messages in Exhibit 22 were relevant to show Vazquez's predisposition. It argues that those messages showed her familiarity with the drug trade, her ongoing participation in drug activities, her skills in negotiating drug deals, and her ongoing attempts to get the CI to engage in drug deals. In the State's view, Exhibit 22 demonstrated that it

---

[2] Vazquez has not argued that there was insufficient evidence to establish the other misconduct alleged in Exhibit 22 as fact under the first step of the Rule 404(b) analysis. Without argument or authority on this issue, that argument is waived, and this Court cannot consider it. *State v. Guerra*, 169 Idaho 486, 494, 497 P.3d 1106, 1114 (2021).

was more likely that Vazquez was ready and willing to sell drugs to the CI at the time he reached out to her.

Evidence is relevant if it is material and probative. I.R.E. 401. Evidence is probative if "it has *any* tendency to make a fact more or less probable than it would be without the evidence[.]" I.R.E. 401(a) (emphasis added). Further, evidence is material if it has "some logical connection" with a fact of consequence to the legal theories presented. *Vintage II, LLC v. Teton Saddleback Vistas Homeowners Ass'n, Inc.*, ___ Idaho ___, ___, 575 P.3d 916, 925 (2025) (quoting *Material*, BLACK'S LAW DICTIONARY (12th ed. 2024)). Here, Exhibit 22 is relevant because it makes it less likely that Vazquez committed the charged offenses because she was persuaded by the CI, and instead makes it more likely that Vazquez had a preexisting willingness to sell controlled substances.

In Idaho, the entrapment defense focuses on whether a defendant is an innocent person who, although not inclined to engage in criminal activity, was persuaded to do so by government conduct that "originate[d] the criminal design and implant[ed] . . . the disposition to commit the alleged offense" in their mind. *State v. Webb*, 175 Idaho 354, ___, 565 P.3d 797, 801 (2025) (quoting *State v. Cartwright*, 168 Idaho 802, 812, 487 P.3d 737, 747 (2021)). To that end, the Idaho Criminal Jury Instructions, which mirror in material part the entrapment instruction delivered in this case, provide a three element test for entrapment, stating that entrapment occurs if (1) "[t]he idea for committing the crime came from an agent of the state and not from the defendant"; (2) "[t]he state agent(s) then persuaded or talked the defendant into committing the crime"; and (3) "[t]he defendant was not ready and willing to commit the crime before the law enforcement officials spoke with the defendant." I.C.J.I. 1513; *see also State v. Hansen*, 105 Idaho 816, 817 & n.1, 673 P.2d 416, 417 & n.1 (1983) (upholding a substantially similar set of jury instructions). The parties focus on whether Exhibit 22 was relevant to prove or disprove the third element, otherwise known as a defendant's predisposition.

As for predisposition, the entrapment defense assumes that the defendant intended to commit the charged conduct but challenges the origin of that intent. *See State v. Barton*, 154 Idaho 289, 292, 297 P.3d 252, 255 (2013). A successful entrapment defense depends on convincing a jury that the criminal intent arose from state conduct instead of a defendant's predisposition to commit the offense. *Id.* Specifically, entrapment looks to the defendant's state of mind prior to being contacted by the government, asking whether the defendant was "ready and willing" to

commit the crime before being approached by the government or its agents. *See Webb*, 175 Idaho at ___, 565 P.3d at 805–06.

This Court has not addressed whether evidence of conduct occurring after a charged offense can be relevant to a defendant's predisposition. That said, in *State v. Stratford*, the Court held that "evidence of subsequent similar acts, occurring shortly after the one charged and a part of the same system or scheme" is admissible to prove a defendant's intent. 55 Idaho 65, 72, 37 P.2d 681, 684 (1934). Likewise, the Court of Appeals, applying *Stratford*, explicitly rejected a per se rule that evidence of subsequent conduct is immaterial to prove intent. *State v. Greensweig*, 102 Idaho 794, 798, 641 P.2d 340, 344 (Ct. App. 1982). There, the court reasoned that the likelihood that a defendant lacked intent on a particular occasion decreases as the number of similar actions increases. *Id.* Taken together, these cases embrace a rule that conduct occurring subsequent to a charged offense may be relevant to a defendant's prior state of mind, including the defendant's predisposition, if those acts are sufficiently similar to the charged conduct and occur in a similar time period. Accordingly, we reject a rigid per se rule that would exclude any evidence of subsequent conduct to rebut an entrapment defense and hold that the relevance of subsequent conduct evidence should be assessed on a case-by-case basis.

Other jurisdictions addressing this question in an entrapment-specific context have reached the same conclusion. *E.g.*, *United States v. Moschiano*, 695 F.2d 236, 243–44 (7th Cir. 1982) (rejecting a per se rule and collecting cases); *People v. Tipton*, 401 N.E.2d 528, 531–32 (Ill. 1980) (same); *State v. Elendt*, 654 S.W.2d 411, 414 (Tenn. Crim. App. 1983) (same); *State v. Schoenhals*, 715 S.W.2d 583, 586 (Mo. Ct. App. 1986) (same). Instead of holding that evidence of subsequent conduct is per se irrelevant to a defendant's predisposition, courts instead address issues with that evidence by evaluating its probative value compared to the risk of prejudice or confusion. *See, e.g.*, *United States v. Mayfield*, 771 F.3d 417, 442 (7th Cir. 2014) (noting that "engagement in the scheme *after* the government's extended efforts to procure . . . participation has limited bearing on . . . predisposition (emphasis in original)); *Moschiano*, 695 F.2d at 244 (holding subsequent acts evidence admissible to show predisposition, but noting that it is "less probative on this issue than prior similar acts"); *United States v. Jimenez*, 613 F.2d 1373, 1376 (5th Cir. 1980) (excluding subsequent acts evidence of predisposition because "expiration of a considerable length of time . . . depleted the extrinsic evidence of any relevance which could have outweighed the peril of jury prejudice").

Here, the district court appropriately rejected a per se rule that would exclude evidence of uncharged acts occurring after the charged conduct and instead considered whether Exhibit 22 had any tendency to show that Vazquez was more likely ready and willing to sell drugs prior to being contacted by the CI. On that point, the district court determined that Exhibit 22, which showed that Vaquez continued to search for and seek to sell drugs after the controlled buy, diminished the probability that her sale to the CI on December 1, 2020, was a product of State-induced intent instead of her own.

The district court did not err in its determination. Vazquez's theory of entrapment rested on her assertion that the CI exploited her friendship and persuaded her to "help" him find drugs. Exhibit 22 both relates to that theory and has some tendency to make it less likely. Evidence showing that Vazquez continued to engage in drug-related conduct shortly after the controlled buy—including searching for drugs independently of the CI and actively asking the CI to assist her in "get[ting] rid of" drugs to "make some cash"—make it less likely that Vazquez was persuaded to sell drugs by the CI's friendship and more likely that she was ready and willing to sell drugs prior to being asked by the CI. Accordingly, we hold that Exhibit 22 was relevant for the non-propensity purpose of demonstrating Vazquez's predisposition to sell drugs.

2.  *The district court did not abuse its discretion in determining that Exhibit 22's probative value was not outweighed by the risk of unfair prejudice.*

Next, Vazquez argues that Exhibit 22, if relevant, was unfairly prejudicial because it distracted the jury from its role of deciding whether she was entrapped and invited them to convict based on poor character. In response, the State argues that any prejudice from Exhibit 22 is not unfair because Vazquez placed her predisposition to sell drugs at issue by raising the entrapment defense.

Evidence, even if relevant, may still be excluded under Idaho Rule of Evidence 403 if a court determines that "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." I.R.E. 403. This case concerns only unfair prejudice, which is defined as "prejudice that tends to suggest a decision on an improper basis." *State v. Johnson*, 173 Idaho 551, 559, 544 P.3d 766, 774 (2024) (internal quotation marks omitted) (quoting *State v. Diaz*, 170 Idaho 79, 91, 507 P.3d 1109, 1121 (2022)). We have advised that evidence of extrinsic misconduct should be carefully analyzed for unfair prejudice because of the inherent "risk that it may be impermissibly used to show propensity." *State v. Leavitt*, 171 Idaho

757, 770–71, 525 P.3d 1150, 1163–64 (2023). That said, the entrapment defense is unique with respect to character evidence because, by raising the defense, the defendant subjects herself to "an appropriate and searching inquiry into [her] own conduct and predisposition as bearing on [her] claim of innocence." *Sherman v. United States*, 356 U.S. 369, 373 (1958) (internal quotation marks omitted) (quoting *Sorrells v. United States*, 287 U.S. 435, 451 (1932)); *see also Tipton*, 401 N.E.2d at 531–32 (explaining that, consistent with this principle from *Sorrells*, most courts allow subsequent acts evidence to prove predisposition).

We conclude that the district court did not abuse its discretion in conducting the Rule 403 balancing test here. First, the district court acknowledged that its performance of that test was discretionary. Next, it acted within the boundaries of that discretion, considering only whether to exclude or admit Exhibit 22 on the bases listed in Rule 403. Finally, the district court acted consistently with applicable legal principles and reached its decision through the exercise of reason. The district court noted that admitting Exhibit 22 would be prejudicial to Vazquez, but not unfairly so, because she had placed her disposition to engage in the drug trade in issue by raising the entrapment defense.

The district court's reasoning follows the general principle articulated in *Sherman* and reiterated in other cases that a defendant who raises an entrapment defense cannot complain of a searching inquiry into her own conduct. While we have no occasion to adopt those standards in this case, we note that many articulations of the entrapment doctrine expressly consider a defendant's character as a factor in the predisposition analysis. *E.g.*, *Mayfield*, 771 F.3d at 435 (citation omitted) (listing a defendant's "character or reputation" as a factor to analyze in assessing predisposition); *United States v. Thomas*, 134 F.3d 975, 978 (9th Cir. 1998) (same); *United States v. Fox*, 134 F.4th 348, 374 (6th Cir. 2025) (same). Likewise, the district court's decision is reasonable, as it noted the similarity between the subsequent misconduct and the charged conduct and explained that it would not be unfair to allow the jury to consider that subsequent conduct in deciding whether Vazquez's criminal intent was her own. Accordingly, we conclude that the district court did not abuse its discretion in concluding that Exhibit 22's probative value was not substantially outweighed by the danger of unfair prejudice.

## B. The district court did not abuse its sentencing discretion.

Finally, Vazquez argues that the district court abused its sentencing discretion by failing to give adequate weight to mitigating factors and imposing a sentence that is excessive under any

reasonable view of the circumstances. The State maintains that the district court imposed a reasonable sentence in light of the record before it and it was appropriate to deter criminal activity.

"Where the sentence imposed by a trial court is within statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion." *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *State v. Miller*, 151 Idaho 828, 834, 264 P.3d 935, 941 (2011)). In reviewing a district court's sentencing decision, this Court considers the entire sentence but "presume[s] that the defendant's term of confinement will probably be the fixed portion of the sentence, because whether or not the defendant's incarceration extends beyond the fixed portion of the sentence will be within the sole discretion of the parole board." *State v. Bailey*, 161 Idaho 887, 895, 392 P.3d 1228, 1236 (2017) (citing *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007)).

> When a trial court exercises its discretion in sentencing, "the most fundamental requirement is reasonableness." A sentence is reasonable if it appears necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution. When reviewing the reasonableness of a sentence, this Court conducts an independent review of the record, giving consideration to the nature of the offense, the character of the offender and the protection of the public interest. "In deference to the trial judge, this Court will not substitute its view of a reasonable sentence where reasonable minds might differ." Furthermore, "[a] sentence fixed within the limits prescribed by the statute will ordinarily not be considered an abuse of discretion by the trial court."

*Id.* at 895–96, 392 P.3d at 1236–37 (alteration in original) (quoting *State v. McIntosh*, 160 Idaho 1, 8, 368 P.3d 621, 628 (2016)) (citations omitted).

We conclude that the district court did not abuse its discretion in sentencing Vazquez to a sentence of one year fixed for the delivery charge and a consecutive sentence of three years fixed, five years indeterminate for the trafficking charge. The district court recognized that it had discretion to impose a sentence but also noted that its discretion was somewhat limited by the mandatory minimum punishment set forth in Idaho Code section 37-2732B(a)(4)(A). The district court also acted within the boundaries of that discretion, imposing a sentence that was consistent with mandatory minimums provided for in the statute and not exceeding statutory maximums. *See* I.C. § 37-2732(a)(1)(A) (maximum sentence for delivery of a controlled substance set at life imprisonment); I.C. § 37-2732B(a)(4) (minimum sentence for methamphetamine trafficking set at three years fixed and maximum sentence set at life imprisonment).

Finally, the rest of the record shows that the district court properly considered the goals of criminal sentencing and reached a sentencing decision through the exercise of reason. The district court expressly stated that it had considered the criteria in Idaho Code section 19-2521 and also considered sentencing goals like societal protection, deterrence, rehabilitation, and retribution. In the district court's view, the sentence imposed primarily served the purpose of societal protection, based on the amount of methamphetamine Vazquez attempted to sell and the impact those drugs could have on the community. The district court also noted a deterrent effect, referencing Vazquez's involvement in the drug trade, history of addiction, and lack of empathy for others. Ultimately, the district court determined that a sentence of three years fixed (the statutory minimum required) and five years indeterminate for the methamphetamine trafficking charge and one year fixed for the heroin delivery charge were appropriate under the circumstances.

In reaching its decision, the district court referenced Vazquez's mitigating evidence, including her service as a nurse, and the "powerful letter[s]" from her mother, sister, and colleagues. The district court also took account of Vazquez's substance abuse issues. Vazquez's argument that the district court "failed to give adequate weight to the mitigating factors in her case" amount to, quite literally, an invitation for this Court to reweigh the district court's findings, which we will not do absent a clearly erroneous determination. *See Bodenbach*, 165 Idaho at 592, 448 P.3d at 1020. Accordingly, we decline to disturb the district court's exercise of discretion in sentencing Vazquez.

## V. CONCLUSION

For the reasons stated above, we affirm the district court's decision admitting Exhibit 22. We also affirm Vazquez's sentence.

Justices BRODY, MOELLER, ZAHN, and MEYER concur.